# United States Court of Appeals for the Federal Circuit

———————————————

**MELBA J. SAUNDERS,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, ACTING SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

———————————————

2017-1466

———————————————

Appeal from the United States Court of Appeals for Veterans Claims in No. 15-975, Judge Coral Wong Pietsch.

———————————————

Decided: April 3, 2018

———————————————

MELANIE L. BOSTWICK, Orrick, Herrington & Sutcliffe, LLP, Washington, DC, argued for claimant-appellant. Also represented by ERIC SHUMSKY; PATRICK AARON BERKSHIRE, BARTON F. STICHMAN, National Veterans Legal Services Program, Washington, DC.

MARK E. PORADA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., L. MISHA PREHEIM; Y. KEN LEE, JONATHAN KRISCH, Office of

General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before NEWMAN, DYK, and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Melba Saunders appeals from a decision of the United States Court of Appeals for Veterans Claims ("the Veterans Court") denying her entitlement to disability benefits based on her reported pain from bilateral knee disorders. *Saunders v. McDonald*, No. 15-0975, 2016 WL 3002862 (Vet. App. May 25, 2016) (*Saunders I*), *aff'd*, 2016 WL 4258493 (Vet. App. Aug. 12, 2016) (*Saunders II*) (affirmed by a three-judge panel). The Veterans Court erred as a matter of law in finding that Saunders's pain alone, absent a specific diagnosis or otherwise identified disease or injury, cannot constitute a disability under 38 U.S.C. § 1110 (2016). We therefore reverse the Veterans Court's legal determination and remand for further proceedings.

## I. BACKGROUND

Saunders served on active duty in the Army from November 1987 until October 1994. *Saunders I*, 2016 WL 3002862, at *1. Saunders did not experience knee problems before serving in the Army. During her service, however, Saunders sought treatment for knee pain and was diagnosed with patellofemoral pain syndrome ("PFPS"). *Id.* Saunders's May 1994 exit examination reflected normal lower extremities but noted Saunders's reporting of a history of swollen knee and hip joints and bone spurs on her feet.

In 1994, Saunders filed a claim for disability compensation for knee pain, hip pain, and a bilateral foot condition. *Id.* The VA Regional Office ("RO") denied Saunders's claim because she failed to report for a re-

quired medical examination. Saunders did not appeal that decision.

In 2008, Saunders filed a new claim for a bilateral knee disability and for foot issues. The RO treated this application as a request to reopen the prior decision, granted the request, and denied both claims on the merits. As to Saunders's knee claim, the RO noted in the rating decision that Saunders was diagnosed with PFPS while in service, but the RO had "not received any current medical evidence" related to Saunders's knee condition.

In 2009, Saunders submitted a Notice of Disagreement, explaining that she had "sustained injuries to [her] knees" while on active duty, citing the PFPS diagnosis, and stating that she was "still experiencing pain and swelling in [her] knees." J.A. 643–44. The RO denied this claim in February 2010, citing a lack of evidence of treatment for a knee condition. Saunders appealed this decision to the Board of Veterans' Appeals ("the Board").

During a 2011 VA examination, the examiner noted that Saunders reported experiencing bilateral knee pain while performing various activities such as running, squatting, bending, and climbing stairs. The examiner found that Saunders had no anatomic abnormality, weakness, or reduced range of motion. The examiner also noted that Saunders had functional limitations on walking, that she was unable to stand for more than a few minutes, and that sometimes she required use of a cane or brace.

The examiner diagnosed Saunders with subjective bilateral knee pain and found that this pain led to (1) increased absenteeism and (2) effects on Saunders's ability to complete daily activities. The examiner also concluded that Saunders's knee condition was at least as likely as not caused by, or a result of, Saunders's military service. The VA later explained that "pain" could not be provided as a diagnosis for Saunders's knee condition, and

requested that the examiner provide a complete rationale for the diagnosis. In a supplemental report, the examiner stated there was no pathology to render a diagnosis on Saunders's condition, and noted that the theory of causation was based on the chronology of events during Saunders's service. After reviewing the supplemental report, the RO once again denied Saunders's claim because, in its view, Saunders had not demonstrated a currently diagnosed bilateral knee condition linked to military service.

Saunders appealed to the Board. Before the Board, Saunders argued that, because the examiner found that her knee conditions were linked to her service, and because she was treated while in service and afterwards for knee pain, she had sufficiently demonstrated service connection for her condition. The Board reopened Saunders's knee claim, concluding the additional evidence she offered was new and material, but denied her claim on the merits. The Board acknowledged that Saunders was diagnosed while in service with PFPS and that the examiner found that Saunders's knee condition was likely related to her active service. But the Board concluded that Saunders failed to show the existence of a present disability as is required for service connection. More specifically, the Board relied on the Veterans Court's ruling in *Sanchez-Benitez v. West*, 13 Vet. App. 282, 285 (1999) (*Sanchez-Benitez I*), in concluding that "pain alone is not a disability for the purpose of VA disability compensation." J.A. 22. Because the examiner did not provide a pathology to explain the pain Saunders reported, the Board denied Saunders service connection for her knee claim.[1]

---

[1]    The Board remanded Saunders's claim for service connection for bilateral bone spurs. That claim is not at issue in this appeal.

Saunders appealed that decision to the Veterans Court. She argued there that the Board erred legally in its interpretation of what constitutes a "disability" under 38 U.S.C. § 1110. The Veterans Court affirmed the Board's decision denying Saunders's claim. *Saunders I,* 2016 WL 3002862, at *6. The Veterans Court noted that, in *Sanchez-Benitez I*, it stated that it "*holds* that pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted." *Id.* at *2 (emphasis added) (quoting *Sanchez-Benitez I*, at 285). Although Saunders asserted this statement was merely dicta, the Veterans Court noted that it had labeled this statement as a holding in *Sanchez-Benitez I*, "making it clear that it intended to establish precedent." *Id.*

The Veterans Court also rejected Saunders's contention that we converted the Veterans Court's holding on pain in *Sanchez-Benitez I* into dicta upon appeal. *Id.* (citing *Sanchez-Benitez v. Principi*, 259 F.3d 1356 (Fed. Cir. 2001) (*Sanchez-Benitez II*)). The Veterans Court explained that we decided *Sanchez-Benitez II* on alternative grounds: the panel on appeal did not need to reach the legal issue of whether pain is a disability because the panel instead held that it could not review the Board's factual determination that Sanchez-Benitez had failed to establish a nexus between his neck pain and his service. *Id.* at *2–3 (citing *Sanchez-Benitez II*, at 1361–62). The Veterans Court noted that it has applied the legal holding of *Sanchez-Benitez I* more than 100 times since that opinion issued, and that it has relied upon or affirmed the Board's application of this legal principle at least 83 times. *Id.* at *4.

Saunders moved for panel review of *Saunders I*, a one-judge decision. A Veterans Court panel granted her motion but adopted the one-judge decision in its entirety, as it found no legal or factual defects in the first ruling. *Saunders II*, 2016 WL 4258493, at *1. The Veterans

Court denied Saunders's motion for en banc review and entered judgment. Saunders timely appealed.

## II. DISCUSSION

The parties dispute three issues on appeal: (1) whether this court has jurisdiction to hear Saunders's challenge to the Veterans Court's decision; (2) whether pain alone, without a specific pathology or an otherwise-identified disease or injury, can constitute a "disability" under 38 U.S.C. § 1110; and (3) if the Veterans Court erred in its legal interpretation, what is the proper remedy. We address each issue in turn. As explained below, we conclude that Saunders has raised a legal challenge to the Veterans Court's interpretation of "disability" that we may review, that the Veterans Court erred in its interpretation of § 1110, and that the proper remedy is to remand for the Board to apply the proper legal framework.

## A. Jurisdiction

Under 38 U.S.C. § 7292(a), this court has jurisdiction to review a Veterans Court's decision with respect to the validity of a decision on a rule of law, or to the validity or interpretation of any statute or regulation relied on by the Veterans Court in making that decision. This court also has jurisdiction to "interpret constitutional and statutory provisions, to the extent presented and necessary to a decision," and to "decide all relevant questions of law." 38 U.S.C. §§ 7292(c), (d)(1). "We review statutory and regulatory interpretations of the Veterans Court *de novo*." *Johnson v. McDonald*, 762 F.3d 1362, 1364 (Fed. Cir. 2014); *accord DeLaRosa v. Peake*, 515 F.3d 1319, 1321 (Fed. Cir. 2008). Absent a constitutional issue, however, we lack jurisdiction to review factual determinations or the application of law to the particular facts of an appeal from the Veterans Court. 38 U.S.C. § 7292(d)(2); *see Guillory v. Shinseki*, 603 F.3d 981, 986 (Fed. Cir. 2010); *Moody v. Principi*, 360 F.3d 1306, 1310 (Fed. Cir. 2004).

The parties dispute whether we may exercise jurisdiction to hear this appeal. Saunders argues that we may exercise jurisdiction because her appeal presents a pure question regarding "the validity of a decision of the [Veterans] Court on a rule of law"—whether pain alone can be a disability under the meaning of § 1110. 38 U.S.C. § 7292(a); *see also id.* §§ (c)–(d). The Secretary contends that Saunders failed to challenge various findings that the Board and Veterans Court made as to her bilateral knee claim, that this court lacks jurisdiction to review those findings or the application of law to the facts, and that those findings preclude review of the underlying legal question Saunders raises. *Id.* § 7292(d)(2).

Despite the Secretary's contentions otherwise, Saunders has not challenged the factual findings of the Board and Veterans Court. Nor have factual findings been made that would preclude a finding of service connection for Saunders's claim if we conclude the Board and Veterans Court erred by finding that Saunders's pain could not be a disability under § 1110. The Veterans Court noted that Saunders did not dispute that her knee pain "cannot be linked to any underlying pathology." *Saunders I*, 2016 WL 3002862, at *2. But the Veterans Court did not make findings that preclude our review: it did not find, for example, that Saunders did not have an in-service disease, or that Saunders's knee pain was unrelated to an injury or disease—whether incurred in service or otherwise. In fact, if the Board had found that Saunders's in-service diagnosis of PFPS was not a disease or injury, it would not have reopened her claim based on new and material evidence. J.A. 21–22. And neither the Board nor the Veterans Court made an explicit finding that Saunders's knee pain does not limit the functionality of her knee.

None of these findings prohibits this court's review of the legal issue Saunders raises—whether pain without an accompanying pathology can constitute a "disability"

under § 1110. The Secretary acknowledges, and the Veterans Court found, that Saunders focused her arguments before the Veterans Court on the legal questions of whether pain alone constitutes a § 1110 disability and whether the "holding" of *Sanchez-Benitez I* was merely dicta. And there is no real dispute between the parties that the Board and Veterans Court resolved Saunders's claim based solely on the holding of *Sanchez-Benitez I*, and our failure to overturn that holding in *Sanchez-Benitez II*. *Saunders I*, 2016 WL 3002862, at *2, *6; J.A. 22.

The critical questions, thus, in resolving Saunders's challenge are legal in nature—we must determine whether: (1) our decision in *Sanchez-Benitez II* requires a finding that pain cannot be a disability under the meaning of § 1110; and (2) if *Sanchez-Benitez II* does not require that conclusion, the statutory language instructs or permits finding that pain can serve as a disability. These are questions of law, and we therefore may exercise jurisdiction to review this challenge under 38 U.S.C. § 7292(a).

### B. Pain Can Constitute a Disability Under 38 U.S.C. § 1110

Saunders argues that the Veterans Court erred as a matter of law in holding that pain alone, without an accompanying pathology or identifiable condition, cannot constitute a "disability" under § 1110. This statute explains that wartime veterans are entitled to disability compensation:

> For *disability resulting* from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the

period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter, but no compensation shall be paid if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs.

38 U.S.C. § 1110 (emphasis added). A veteran seeking compensation under this provision must establish three elements: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." *Shedden v. Principi*, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Saunders challenges the Veterans Court's legal treatment of the first prong: "the existence of a present disability."

As noted, *Sanchez-Benitez II* does not control the outcome of this case. There, the panel explicitly declined to resolve the legal issue before us in this case. *Sanchez-Benitez II*, at 1361–62. The panel instead concluded that the Board and Veterans Court found that the veteran had not met the nexus requirement as his current pain could not be attributed to the trauma he experienced while in service. *Id.* at 1362. We explicitly did not pass judgment on the legal issue before us in that case. *Id.* at 1361. And, we characterized as dicta the very holding in *Sanchez-Benitez I* that is at issue here. *Id.*

We therefore turn to the language of the statute, "[a]s in any case of statutory construction, our analysis begins with the language of the statute." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (internal quotation marks omitted); *see also Allen v. Principi*, 237 F.3d 1368, 1375 (Fed. Cir. 2001) ("The starting point in every case involving construction of a statute is the language itself." (quoting *Madison Galleries, Ltd. v. United States*, 870 F.2d 627, 629 (Fed. Cir. 1989))). As noted, § 1110 imposes

a requirement that a disability must result "from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty." But this statute does not expressly define what constitutes a "disability." "In the absence of an express definition," the presumption is that "Congress intended to give [statutory] words their ordinary meanings." *Terry v. Principi*, 340 F.3d 1378, 1382–83 (Fed. Cir. 2003) (citing *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995)).

### 1. "Disability" Refers to Functional Impairment

The parties do not seem to dispute that the term "disability" refers to a functional impairment, rather than the underlying cause of the impairment. The Secretary acknowledges that "the term 'disability' refers to a condition that impairs normal functioning and reduces earning capacity." Appellee Br. 21. The Secretary also acknowledges that 38 U.S.C. § 1155, the authority for the schedule for rating disabilities, "associates the concept of disability with a reduction or impairment in earning capacity." *Id.* at 22. And, the Secretary concedes that "VA regulations invoke functional limitation as the indicator of reduced earning capacity and the barometer of disability." *Id.*

This conclusion comports with the plain language of § 1110, which specifically states that compensation is due for a disability "*resulting* from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty," not that the disability itself *must be* the qualifying personal injury or aggravation suffered by the veteran. The dictionary definitions of "disability" offered by the parties reflect that the plain and ordinary meaning of the term relates to functional incapacitation or impairment, rather than the particular underlying cause of that condition. *See, e.g.*, *Disability*, Merriam-Webster's Collegiate

Dictionary 354 (11th ed. 2014) (defining "disability" as "the condition of being disabled," that is, a "limitation in the ability to pursue an occupation because of a physical or mental impairment."); *Disability*, Webster's Third New International Dictionary 642 (1961) (defining "disability" as "the inability to pursue an occupation or perform services for wages because of physical or mental impairment"); *Disability*, Dorland's Illustrated Medical Dictionary 526 (32d ed. 2012) (defining "disability" as "an incapacity or lack of the ability to function normally; it may be either physical or mental or both"). In other words, while a diagnosed condition may result in a disability, the disability itself need not be diagnosed.

The VA's disability rating regulations also reflect this meaning, as the percentages in the disability rating schedule "represent as far as can practicably be determined the average *impairment* in earning capacity" resulting from "all types of diseases and injuries *encountered as a result of* or incident to military service . . . . and their residual conditions in civil occupations." 38 C.F.R. § 4.1 (emphases added); *cf. Davis v. Principi*, 276 F.3d 1341, 1344 (Fed. Cir. 2002) (labeling 38 C.F.R. § 4.1 "[t]he Secretary's definition of 'disability,'" and acknowledging that "[t]he Secretary's definition of 'disability' comports well with its common usage."). The VA's regulation on "functional impairment" explains that "[t]he basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to *function under the ordinary conditions of daily life* including employment." 38 C.F.R. § 4.10 ("Functional impairment") (emphasis added).

This definition also comports with the purpose of veterans compensation: to compensate for impairment to a veteran's earning capacity. The en banc Veterans Court has recognized this point in *Allen v. Brown*, 7 Vet. App. 439, 448 (1995), where it explained "that the term 'disability' as used in § 1110 refers to impairment of earning

capacity." It also noted that, "in view of the statutory purpose to compensate veterans based upon degree of impairment of earning capacity, the direction in § 1110 to pay compensation '[f]or disability' resulting from injury or disease may reasonably be construed as a direction to pay compensation for impairment of earning capacity resulting from such injury or disease." *Id.* And, as Saunders points out, the legislative history of veterans compensation highlights Congress's consistent intent that there should be a distinction between a disability and its cause. *See, e.g.*, War Risk Insurance Act Amendments, Pub. L. No. 65-90, § 300, 40 Stat. 398, 405 (1917) ("That for death or disability resulting from personal injury suffered or disease contracted in the line of duty, . . . the United States shall pay compensation as hereinafter provided."); An Act to grant Pensions, 12 Stat. 566, 566 (1862) (establishing pensions for service members who were or became "disabled by reason of any wound received or disease contracted . . . in the line of duty").

When Congress has decided to depart from this distinction by defining "disability" as equivalent to an injury or disease, it has done so explicitly, according to Saunders. For example, in chapter 17 of Title 38, referring to VA medical and nursing facilities, Congress stated that "[t]he term 'disability' means a disease, injury, or other physical or mental defect." 38 U.S.C. § 1701(1) (2016). But Congress has made no such explicit statement as to the meaning of "disability" in § 1110, and the en banc Veterans Court in *Allen* expressly held that the § 1701(1) definition does not apply to compensation benefits. 7 Vet. App. at 446. The Veterans Court reached this conclusion after finding that Congress had "specifically limited the application of the § 1701(1) definition of 'disability'" to subchapter 17, and that "the statutory purpose to compensate veterans based upon degree of impairment of earning capacity" led to a different meaning of the term in § 1110—namely, that it "refers to impairment of earning

capacity." *Id.* at 447–48. Applying that definition, the court held that "*any additional impairment* of earning capacity resulting from an already service-connected condition, regardless of whether or not the additional impairment is itself a separate disease or injury caused by the service-connected condition, shall be compensated." *Id.* at 448 (emphasis in original).

For these reasons, we find that "disability" in § 1110 refers to the functional impairment of earning capacity, not the underlying cause of said disability.

### 2. Pain Alone May Be a Functional Impairment

We next consider whether pain alone can serve as a functional impairment and therefore qualify as a disability, no matter the underlying cause. We conclude that pain is an impairment because it diminishes the body's ability to function, and that pain need not be diagnosed as connected to a current underlying condition to function as an impairment. The Secretary fails to explain how pain alone is incapable of causing an impairment in earning capacity, and we see no reason to reach such a conclusion. In fact, the Secretary concedes that "pain *can* cause functional impairment in certain situations, that disability can exist in those cases, and that a formal diagnosis is not always required." Appellee Br. 26 (emphasis in original).

Dictionary definitions for the term "impairment" support the conclusion that pain can serve as a functional impairment. Dorland's Medical Dictionary defines "impairment" as "any abnormality of, partial or complete loss of, or loss of the function of, a body part, organ, or system," and this dictionary uses pain as a specific example of an impairment. *Impairment*, Dorland's Illustrated Medical Dictionary 922 (32d ed. 2012). Webster's defines "impair" as "diminish in quantity, value, excellence, or strength." *Impair*, Webster's Third New International Dictionary 1131 (1961). And, Merriam-Webster's defines

"impaired" as "disabled or functionally defective." *Impaired*, Merriam-Webster's Collegiate Dictionary 622 (11th ed. 2014). None of these definitions preclude finding that pain may functionally impair a veteran.

The VA's disability rating regulations also treat pain as a form of functional impairment. For example, 38 C.F.R. § 4.10 reads that "[t]he basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment." We have explained that the "functional loss" regulation, 38 C.F.R. § 4.40, "makes clear that functional loss may be due to pain and that pain may render a part seriously disabled." *Thompson v. McDonald*, 815 F.3d 781, 785–86 (Fed. Cir. 2016). Other regulations account for pain in determining the nature of a veteran's disability; one regulation identifies "[p]ain on movement" as one of the "factors of disability" in evaluating joints. 38 C.F.R. § 4.45(f). Another regulation notes that painful motion is a consideration in evaluating disabilities of the pelvic bones. *Id.* § 4.67. And "pain" in the lumbosacral and sacroiliac joints is to be given "careful consideration." *Id.* § 4.66. Similarly, "fatigue-pain" is a "cardinal sign[]" of muscle disability. *Id.* § 4.56(c). And, in *Sanchez-Benitez II*, we explained that, in the context of rating decisions, "[i]t is thus clear that pain is not wholly irrelevant to the assessment of a disability for which a veteran seeks compensation. . . . In each of [38 C.F.R. §§ 4.40, 4.45, and 4.56], pain is considered in connection with assessing the extent of a particular stated disability, *i.e.*, disability being the functional loss of normal body working movements (section 4.40), disability in the joints (section 4.45),

and disability of the muscles (section 4.56)." *Id.* at 1361.[2] Although the Secretary argues that the assignment of ratings is downstream from the initial determination that a veteran has a disability, these regulations indicate how the VA interprets the role of pain in assessing disability, and thus they are relevant to the question of whether pain can be a disability.

Given this broad recognition that pain is a form of functional impairment, if Congress intended to exclude pain from the definition of disability under § 1110, it would have done so expressly. *See, e.g., Hamilton v. Lanning*, 560 U.S. 505, 517 (2010) (explaining that, if Congress intended for a term "to carry a specialized—and indeed, unusual—meaning" in the relevant statutory provision, "Congress would have said so expressly."). For example, Congress explicitly defined "disability" in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1)(A) (2016). Under that statute, the physical or mental impairment must "result[] from ana-tomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). And, "[a]n individual's statement as to pain . . . shall not alone be conclusive evidence of disability as defined in this section," as "there must be medical signs and find-ings, established by medically acceptable clinical or

---

[2]    The Veterans Court has also recognized this prin-ciple. In *Schafrath v. Derwinski,* 1 Vet. App. 589 (1991), the Veterans Court faulted the Board for denying com-pensation to a veteran experiencing disabling pain as a result of a service-connected elbow injury, because the Board ignored his reported pain. *Id.* at 591–93.

laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain." *Id.* § 423(d)(5)(A). None of this language exists in the veterans context, and we find no other indication that Congress intended that pain be excluded from the definition of a "disability" under § 1110.

An Act of Congress "should not be read as a series of unrelated and isolated provisions." *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 570 (1995). We must read the words of a statutory provision "in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). Contrary to the Secretary's argument, 38 U.S.C. § 1117 does not indicate that pain devoid of underlying current pathology is not compensable under § 1110. Section 1117 establishes a presumption of service connection for certain Persian Gulf War veterans with qualifying chronic disabilities caused by undiagnosed illnesses or chronic multisymptom illnesses. This section specifically recognizes pain as a form of functional loss, specifying that "[m]uscle pain" and "[j]oint pain" can be manifestations of an undiagnosed illness and therefore can constitute a disability even in the absence of a diagnosis. 38 U.S.C. § 1117(g)(4)–(5) (2016). But nothing in § 1117 addresses whether pain alone can be a disability under § 1110—in fact, § 1117 reflects an understanding that pain may be a disability even in the absence of a diagnosis. To this end, we have previously stated that "the Veterans Court erred in concluding that pain cannot evidence a qualifying chronic disability under § 1117." *Joyner v. McDonald*, 766 F.3d 1393, 1395 (Fed. Cir. 2014). Section 1117 provides a presumption of service connection for a particular subset of disabilities arising from Persian Gulf service, but there is no reason to assume that § 1117

precludes an interpretation of § 1110 that encompasses pain as a disability.

In light of this, the Veterans Court's interpretation of § 1110 is not persuasive. In *Sanchez-Benitez I*, the Veterans Court acknowledged that "pain often warrants separate and even additional consideration during the course of rating a disability." 13 Vet. App. at 285 (citing to 38 C.F.R. §§ 4.40 (must consider pain in relation to functional loss of musculoskeletal system), 4.45 (must consider pain on movement in rating joint disability), 4.56 (1998) (must consider pain in evaluating muscle disability)). But, there, the Veterans Court failed to offer any citation or reasoned analysis to explain its holding that pain alone could not qualify as a disability under the first prong of the service-connection test. *Id.* The Veterans Court did not discuss issues related to disability, pain, or functional impairment, nor did the Veterans Court in *Saunders I* perform any statutory analysis when defending *Sanchez-Benitez I*'s holding. *Saunders I*, 2016 WL 3002862, at *5.

*Sanchez-Benitez I*'s holding reads out the distinction Congress made in § 1110 between the requirement for a disability and the requirement for in-service incurrence or aggravation of a disease or injury. If Congress meant to merge these requirements such that a disability must be a presently-diagnosed disease or injury, it could have said so explicitly, but it did not. "Absent persuasive indications to the contrary, we presume Congress says what it means and means what it says." *Simmons v. Himmelreich*, 136 S. Ct. 1843, 1848 (2016). And we have emphasized the distinction between the disability and incurrence prongs in many cases, including in *Sanchez-Benitez II*:

> Thus, in order for a veteran to qualify for entitlement to compensation under those statutes, the veteran must prove existence of a disability, and

one that has resulted from a disease or injury that occurred in the line of duty.

*Id.* at 1360–61.

The Veterans Court's interpretation of "disability" is also illogical in the broader context of the statute, given that the third requirement for service connection is establishment of a nexus between the present disability and the disease or injury incurred during service. If the disability must be the underlying disease or injury, there is no reason for a nexus requirement—and therefore *Sanchez-Benitez I* eviscerates the nexus requirement.

As noted, the Secretary does not challenge most, if any, of the rationale laid out above for why pain should be treated as a functional impairment. Instead, the Secretary argues that the definition Saunders proposes should be limited to require that pain must affect some aspect of the normal working movements of the body.[3] The Secre-

---

[3] Saunders argues that, even under the definition the Secretary proposes, her normal working movements are inhibited by her pain and she would therefore satisfy the disability prong. Although the Secretary attempts to ascribe Saunders's functional limitations primarily to Saunders's foot condition, because the Board recited a finding of absenteeism when discussing the foot condition but not the knee condition, Saunders rejects this position. Saunders notes that the Board's reference to increased absenteeism as to the foot condition addressed the period after the 2011 examiner report and was the basis on which the Board ordered an additional VA examination of Saunders's feet. The parties dispute whether this finding affects the relative contributions of Saunders's foot and knee conditions to the absenteeism noted in the 2011 examiner report. The examiner noted functional impair-

tary cites to various Veterans Court decisions and VA regulations in support of his proposal. *See, e.g., Mitchell v. Shinseki*, 25 Vet. App. 32, 43 (2011) ("[P]ain must affect some aspect of 'the *normal working movements* of the body' such as 'excursion, strength, speed, coordination, and endurance,' 38 C.F.R. § 4.40, in order to constitute functional loss" (emphasis added)). The Secretary contends that we agreed with this rationale in *Thompson*, as evidenced by our statement that 38 C.F.R. § 4.40, a rating regulation entitled "Functional Loss" and referencing in relevant part disabilities of the musculoskeletal system, requires proof that the applicant "cannot perform the normal working movements of the body." 815 F.3d at 786.

But the Secretary has failed to point to a convincing reason to impose the requirement he proposes. This requirement does not cover all scenarios in which pain could amount to a functional limitation. As the Secretary acknowledges, there are scenarios such as debilitating headaches that could amount to functional impairment but do not necessarily affect the normal working movements of the body. Appellee Br. 26–27 n.11. The Veterans Court has ruled that functional loss is compensable even if the range of motion is not limited. *Schafrath,* 1 Vet. App. at 591–92 (noting that 38 C.F.R. § 4.40 contemplates multiple types of functional loss, and that functional loss is compensable regardless of whether it is caused by pain or by limited flexion); *Petitti v. McDonald*, 27 Vet. App. 415, 422–30 (2015) (rejecting Secretary's argument that 38 C.F.R. § 4.59, which governs the evaluation of painful motion, requires evidence observed during range-

ment was a result of both the foot and knee conditions. To the extent these factual findings should be clarified, the Board will be able to do so on remand.

of-motion testing, and rejecting the Secretary's argument that "the mere presence of joint pain is not sufficient.").

We also reject the Secretary's suggestion that pain must be tied to physical evidence of a lack of functionality and/or physical evidence of a current disease or injury. The Secretary attempts to tie this proposed requirement to the language of 38 C.F.R. § 4.40, which states that "functional loss . . . may be due to pain, supported by adequate *pathology*" (emphasis added). But the Secretary does not explain why an in-service diagnosis of a disease cannot provide "adequate pathology" to explain presently-occurring pain. And, other portions of § 4.40 do not refer to "pathology," but instead state broadly that, for example, "a part which becomes painful on use must be regarded as seriously disabled."

This holding is also supported by common sense. As Saunders explains, a physician's failure to provide a diagnosis for the immediate cause of a veteran's pain does not indicate that the pain cannot be a functional impairment that affects a veteran's earning capacity. For example, the VA's "Chronic Pain Primer" acknowledged that "chronic pain can develop in the absence of the gross skeletal changes we are able to detect with current technology" such as MRI or X-ray, and common causes like muscle strain and inflammation "may be extremely difficult to detect." U.S. Dep't of Veterans Affairs, VHA Pain Management: Chronic Pain Primer, http://web.archive.org/web/20170501045051/https://www.va.gov/PAINMANAGEMENT/Chronic_Pain_Primer.asp. In some situations, such as for post-traumatic stress disorder, herbicide exposure in Vietnam, and unexplained illnesses affecting Middle East veterans, medical science simply has been unable, as of yet, to diagnose the disabling impact of service for veterans affected by these conditions.

We see no reason for the Secretary's concern that this holding will somehow improperly expand veterans' access to deserved service compensation for pain that did not arise from a disease or injury incurred during service. And nothing in today's decision disturbs either of the other requirements for demonstrating entitlement to service connection—that the disability is linked to an in-service incurrence or aggravation of a disease or injury.

We do not hold that a veteran could demonstrate service connection simply by asserting subjective pain—to establish a disability, the veteran's pain must amount to a functional impairment. To establish the presence of a disability, a veteran will need to show that her pain reaches the level of a functional impairment of earning capacity. The policy underlying veterans compensation—to compensate veterans whose ability to earn a living is impaired as a result of their military service—supports the holding we reach today.

We hold that the Veterans Court erred as a matter of law in holding that pain alone, without an accompanying diagnosis or identifiable condition, cannot constitute a "disability" under § 1110, because pain in the absence of a presently-diagnosed condition can cause functional impairment.

### C. Remedy

Finally, the parties dispute the proper remedy in this case, given our conclusion that the Veterans Court erred in its legal interpretation. Saunders contends that the Board's and examiner's findings mandate outright reversal of the Board's denial of her claim for service connection. The Secretary requests that we remand to the Veterans Court for remand to the Board for further development of Saunders's claim. We agree with the Secretary that remand is the appropriate remedy in this case.

The Board reopened Saunders's knee claim after find-ing Saunders had presented new and material evidence that "includes an impression of bilateral knee condition that was likely caused by or a result of service." J.A. 22. The Board noted Saunders's in-service diagnosis of PFPS and Saunders's complaints of knee pain following service. *Id.* The Board also noted the examiner's conclusion that Saunders's bilateral knee condition "was likely related to the Veteran's period of service." *Id.* But the Board based its rejection of Saunders's claim solely on *Sanchez-Benitez I*'s holding that pain alone cannot be a disability for the purpose of VA disability compensation. *Id.*

The Board has not considered whether Saunders sat-isfied her burden to show her bilateral knee condition qualifies as a "disability" under the correct legal definition for that term. More specifically, the Board made no factual findings as to whether Saunders's pain impaired her function, or as to the scope of any such impairment.

The Board also has not determined whether Saunders satisfied the incurrence and nexus prongs of the service connection test. More specifically, the Board has not made a factual finding as to whether Saunders's pain, if it qualifies as a disability, is traceable to an injury or dis-ease that manifested itself during service. It could not have done so, because it applied the *Sanchez-Benitez I* holding which precluded finding Saunders's pain to con-stitute a disability.[4] Nor has the Board made explicit

----

[4] Saunders contends that the Secretary has waived any challenge to these prongs of the service-connection test by failing to contest them before the Veterans Court. We decline to find waiver here. The Secretary did discuss its contention that Saunders failed to demonstrate pa-thology for her pain, which implicates both the incurrence and nexus prongs of the service-connection test. The

findings that Saunders proved the existence of an in-service incurrence or aggravation of a disease or injury, or a causal relationship between her present alleged disability and the disease or injury incurred or aggravated during service.

We may not make these factual findings in the first instance. The proper course of action is for the Veterans Court to remand this matter to the Board. *See Byron v. Shinseki*, 670 F.3d 1202, 1205 (Fed. Cir. 2012) (ordering remand of factual determination to the Board "for further development and application of the correct law" where "the Board misinterprets the law and fails to make the relevant initial factual findings" (internal quotations and citation omitted)). On remand, the Board must determine whether the examiner's findings as to Saunders's bilateral knee condition amount to functional impairment under the correct legal test for disability. To the extent necessary, the Board must also make factual findings as to the other prongs of the service-connection test.

### III. CONCLUSION

For the reasons stated above, we find the Board legally erred as to its interpretation of the meaning of "disability" under § 1110, as pain alone, without an accompanying diagnosis of a present disease, can qualify as a disability. We remand this action for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

COSTS

Costs to Saunders.

---

Board may examine this question on remand, as it focused its earlier analysis solely on the disability prong.