# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-0966

GENERAL WEBB, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued September 10, 2019        Decided March 26, 2020)

*Christian A. McTarnaghan*, with whom *Dvora Walker* was on the brief, both of Providence, Rhode Island, for the appellant.

*Drew A. Silow*, Acting Deputy Chief Counsel, with whom *Richard J. Hipolit*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Monique A.S. Allen*, Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before MEREDITH, TOTH, and FALVEY, *Judges*.

MEREDITH, *Judge*, filed the opinion of the Court. FALVEY, *Judge*, filed an opinion concurring in part and dissenting in part.

MEREDITH, *Judge*: The appellant, General Webb, through counsel appeals a December 29, 2017, Board of Veterans' Appeals (Board) decision that denied entitlement to disability compensation for a psychiatric disorder, including post-traumatic stress disorder (PTSD). Record (R.) at 1-12. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was referred to a panel of the Court, with oral argument,[1] to address whether, pursuant to *Saunders v. Wilkie*, 886 F.3d 1356 (Fed. Cir. 2018), a claimant may establish entitlement to disability compensation for a psychiatric disability based on symptoms and functional impairment absent a diagnosis that conforms to the *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition (DSM-IV).

For the reasons discussed below, the Court concludes that this case presents factual disputes that should be resolved by the Board in the first instance and may moot the question posed

---

[1] The University of Detroit Mercy School of Law hosted oral argument. The Court thanks the school for its hospitality.

in the parties' briefs. Accordingly, the Court will vacate the Board's decision without at this time resolving that question and remand the matter for further proceedings consistent with this decision.

## I. BACKGROUND

The appellant, General Webb, served on active duty in the U.S. Army from April 1969 to November 1971, including service in Vietnam. R. at 1669. His DD-Form 214 reflects that his military occupational specialty (MOS) was a "57F20 Memorial Alt Spec" and that his related civilian occupation was "Funeral Attend." *Id.* His service treatment records are silent for any psychiatric complaints, treatment, or diagnoses. R. at 1616-53.

In April 2008, he filed a disability compensation claim for PTSD, describing sleepless nights and difficulty adjusting to everyday life and in relationships. R. at 2538. He stated that his MOS required him to pack and ship dead bodies, sometimes consisting of body parts only. *Id.* VA treatment records reflect that he screened positive for PTSD during a preventative health assessment in January 2009. R. at 1251. In December 2009, the appellant again described his in-service stressors, R. at 2406, and reported that he suffered sleepless nights and anxiety attacks, which caused two marriages to end, R. at 2408.

He underwent a PTSD examination in April 2010. R. at 2190-202. He reported trouble falling and staying asleep, daytime fatigue, ritualistic behavior (checking that doors are locked), panic attacks at funerals, difficulty concentrating, hypervigilance, and exaggerated startle response. R. at 2195, 2199. He also indicated that he experienced symptoms of helplessness and horror after service. R. at 2196. The examiner did not provide an Axis I diagnosis, noting that "[a] more precise diagnosis can[]not be rendered as there is no objective data to support a more definitive diagnosis." R. at 2200-01; *see* R. at 2202.

Later that month, a VA regional office (RO) conceded exposure to a combat-related stressor but denied his claim for PTSD due to the lack of a current diagnosis. R. at 2184-89. The appellant disagreed and perfected his appeal. R. at 1766-67, 2148-49. The Board remanded the claim, then characterized only as a claim for PTSD, in June 2014 for a new examination. R. at 1730-36. In that regard, the Board found the April 2010 examination inconsistent with the appellant's reported medical history, noting that, although "the examiner stated there was no diagnosis, she also acknowledged the [appellant] had chronic symptoms, and that he engaged in other activities to try and avoid his symptoms." R. at 1733.

The appellant underwent another PTSD examination in August 2014; the examiner opined that he did not have a PTSD diagnosis that conformed to the Fifth Edition of the *DSM* (DSM-5). R. at 1594. Instead, she diagnosed unspecified cannabis-related disorder and opined that he had "[o]ccupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress." *Id.* She also stated that "[a] link between subjective symptoms of nightmares, feeling uncomfortable attending funeral services, trouble sleeping[,] and his military duties can[]not be established. [He] exhibits poor sleep hygiene to include cannabis and alcohol use. His subjective symptoms are most likely related to [c]annabis use." R. at 1601.

The appellant through his representative argued that the 2014 examination was inadequate and cited VA research illustrating that a cannabis-related disorder is a common symptom of PTSD. R. at 1508-11, 1538-42. The Board subsequently remanded the claim to obtain a new examination assessing the nature and etiology of *any* acquired psychiatric disorder, including PTSD; the Board instructed the examiner to apply the DSM-IV. R. at 1474-83.

In December 2016, a VA examiner opined that the appellant did not have PTSD or any other mental disorder that conforms with the DSM-5 or DSM-IV. R. at 613, 619. The examiner noted that test results were indeterminate regarding feigning, but showed valid, elevated scores for symptoms associated with trauma: "anxious arousal, anxiety, depression, anger, intrusive experiences, defensive avoidance, dissociation, sexual disturbance[,] and tension reduction behavior." R. at 619. However, regarding his evaluation under the DSM-IV criteria for PTSD, the examiner explained that the appellant did not have reexperiencing symptoms from criterion B and only one symptom from criterion C. *Id.* Additionally, the examiner reported that no other psychiatric diagnosis was assigned under the DSM-IV. R. at 620. He acknowledged that the 2014 examiner had diagnosed unspecified cannabis-related disorder but opined that there was insufficient information to support the diagnosis. *Id.* Instead, he stated that the 2016 examination results were consistent with the 2010 examination results, which did not result in assignment of a diagnosis. *Id.*

The appellant's representative submitted another brief in May 2017, arguing in part that the December 2016 examination was inadequate. R. at 566-68. He stated:

> The appellant maintains that he has a mental disorder and that it has resulted in his abuse of cannabis an[d] alcohol since he was in the Army. The exam[ination] provided no logical explanation for the abuse and failed to even provide a diagnosis

under DSM-[5] to support that there is a disorder. Surely, the appellant has a disorder, and it has resulted in self-medication since he was on active duty. The Board was correct to remand the appeal for an adequate examination; however, it appears that after two hours with an examiner, the Board is no closer to a competent examination than prior to the remand.

R. at 567.

In the December 29, 2017, decision on appeal, the Board denied entitlement to disability compensation for a psychiatric disability, including PTSD. R. at 2-12. Relevant to the issues raised on appeal, the Board found that the DSM-IV applies; acknowledged, pursuant to *Clemons v. Shinseki*, 23 Vet.App. 1 (2009) (per curiam order), that the claim is not limited to PTSD; and summarized the April 2010, August 2014, and December 2016 VA examination reports. R. at 4-9. The Board denied entitlement to disability compensation for PTSD, noting that the "VA examiners determined that the [appellant] did not meet the criteria for PTSD" and that, "[i]n the absence of proof of a current disability, there can be no valid claim." R. at 9. The Board then determined that disability compensation was not warranted for "any psychiatric disorder," stating that service treatment records are negative for any findings, complaints, or diagnoses, and that "[t]he competent and probative evidence of record does not etiologically link any psychiatric disorder to service or any incident during service." R. at 10. Regarding the appellant's diagnosed unspecified cannabis disorder, the Board discounted his argument that it may be related to psychiatric symptoms that were caused by or related to service, as speculative and lacking any probative value. *Id.* This appeal followed.

## II. ANALYSIS

The appellant argues that the Board erred by relying on the 2014 and 2016 VA examinations because the Board previously found the 2014 examination inadequate; and both examinations are inadequate because the examiners utilized the DSM-5 instead of the DSM-IV and provided insufficient support for their conclusions. Appellant's Brief (Br.) at 10-19; Reply Br. at 1-8.[2] He further asserts that the Board erred by failing to consider whether his lay statements are evidence of a psychiatric disability other than PTSD. Appellant's Br. at 19-21 (citing *Saunders*, 886 F.3d at 1362); Reply Br. at 9-12. In this regard, he contends that his symptoms caused

---

[2] On August 30, 2019, the appellant withdrew his argument that the examinations are inadequate due to the examiners' use of the DSM-5 diagnostic criteria.

4

functional impairment and, therefore, pursuant to *Saunders*, constitute a "current disability" for purposes of establishing entitlement to disability compensation. Appellant's Br. at 20-21; Reply Br. at 10-11.

The Secretary counters that the 2016 examination report, because it reflects that the examiner applied the DSM-IV, corrected any error in the 2014 examination, and that it is adequate for adjudication purposes. Secretary's Br. at 6-12. He further contends that *Saunders* is limited to the facts of that case—that pain alone, absent a diagnosis, may be compensated if it causes functional loss. *Id.* at 12-13.

A. Law

Establishing that a disability is service connected for purposes of entitlement to VA disability compensation generally requires medical or, in certain circumstances, lay evidence of (1) a current disability, (2) incurrence or aggravation of a disease or injury in service, and (3) a nexus between the claimed in-service injury or disease and the current disability. *See* 38 U.S.C. § 1110; *Shedden v. Principi*, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); *see also Davidson v. Shinseki*, 581 F.3d 1313, 1316 (Fed. Cir. 2009); 38 C.F.R. § 3.303 (2019). Establishing that PTSD is service connected for purposes of entitlement to VA disability compensation requires (1) a current medical diagnosis of PTSD, (2) a medically established link between the current PTSD and the claimed in-service stressor, and (3) credible supporting evidence that the in-service stressor occurred. 38 C.F.R. § 3.304(f) (2019); *see Molitor v. Shulkin*, 28 Vet.App. 397, 402-03 (2017).

Under certain circumstances, and as part of its duty to assist claimants, VA must provide a medical examination. *See* 38 U.S.C. § 5103A(d). "[O]nce the Secretary undertakes the effort to provide an examination [or opinion,] . . . he must provide an adequate one." *Barr v. Nicholson*, 21 Vet.App. 303, 311 (2007). A medical examination or opinion is adequate "where it is based upon consideration of the veteran's prior medical history and examinations," *Stefl v. Nicholson*, 21 Vet.App. 120, 123 (2007), "describes the disability, if any, in sufficient detail so that the Board's 'evaluation of the claimed disability will be a fully informed one,'" *id.* (quoting *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994)) (internal quotation marks omitted), and "sufficiently inform[s] the Board of a medical expert's judgment on a medical question and the essential rationale for that opinion," *Monzingo v. Shinseki*, 26 Vet.App. 97, 105 (2012) (per curiam).

5

The Board's determinations whether a medical examination or opinion is adequate and whether the record establishes entitlement to service connection are findings of fact, which the Court reviews under the "clearly erroneous" standard. *D'Aries v. Peake*, 22 Vet.App. 97, 104 (2008) (per curiam); *Russo v. Brown*, 9 Vet.App. 46, 50 (1996). A finding of fact is clearly erroneous when the Court, after reviewing the entire evidence, "is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). As with any material issue of fact or law, the Board must provide a statement of the reasons or bases for its determination "adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court." *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *see* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 56-57.

## B. Adequacy of VA Examinations

The appellant argues that the 2014 examination is inadequate in part because the examiner conflated the issue of whether he had a current diagnosis with whether there was a nexus between that diagnosis and service; provided no response as to whether he exhibited symptoms to satisfy criterion C for a diagnosis of PTSD[3]—"[p]ersistent avoidance of stimuli associated with the traumatic event"—but later in his report noted that the appellant "does not feel comfortable attending funerals"; and failed to consider whether his cannabis disorder was related to any psychiatric issues. R. at 1599-601; *see* Appellant's Br. at 13-14. Regarding the 2016 examination, he contends that the examiner made inconsistent findings concerning the presence of symptoms to satisfy criteria B and C; provided no response under the heading "symptoms" but also noted that testing revealed elevated scores for symptoms associated with trauma; and, similar to the April 2010 examiner, failed to explain why a diagnosis was not rendered despite the presence of chronic symptoms. Appellant's Br. at 15-18. He further asserts that he raised the issue of the adequacy of this examination below, yet the Board provided no reasons or bases as to whether VA satisfied the duty to assist. *Id.* at 18-19.

---

[3] Both editions of the DSM organize the diagnostic criteria for PTSD by letters, beginning with the letter "A." *See* DSM-5 at 271-72 (5th ed. 2013); DSM-IV at 467-68 (4th ed. 1994). For example, a diagnosis of PTSD under the DSM-IV requires at least one symptom under criterion B (persistently reexperiencing the traumatic event) and three or more from criterion C ("[p]ersistent avoidance of stimuli associated with the trauma and numbing of general responsiveness"). DSM-IV at 468.

The Secretary maintains that the Board recounted the findings of the various examinations but relied in part on the 2016 examination report, in which the examiner found no diagnosis under the DSM-IV, to deny the claim. Secretary's Br. at 6-7. The Secretary further contends that the appellant's arguments are based on lay hypothesizing as to what the evidence indicates; examiners do not have a reasons-or-bases requirement; and, based on a reading of the 2016 examination report as a whole, it is evident that it is adequate. *Id.* at 8-11.

The Court cannot address whether the Board erred by relying on the 2014 and 2016 VA examinations because the Board did not make any explicit findings regarding the adequacy of those examinations or explain which examinations it relied on to deny the appellant's claim and, to the extent that it implicitly found either or both examinations adequate, its reasons are not readily apparent. *See* R. at 6-10 (summarizing the evidence, including the VA examination reports, and considering whether entitlement to disability compensation was warranted without explaining whether the examinations were adequate or why the Board considered them probative), 9 (referring to the "treating VA examiners" before concluding that the appellant had not been diagnosed with PTSD), and 10 (stating that the "competent and probative evidence does not etiologically link any psychiatric disorder to service" without identifying any specific medical evidence); *see also D'Aries*, 22 Vet.App. at 104. Although the parties make competing arguments as to whether the VA examinations were adequate, *see* Appellant's Br. at 10-19; Reply Br. at 1-8; Secretary's Br. at 6-12, the Court's review is frustrated by the Board's failure to make the necessary factual findings in the first instance, *see Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) ("[A]ppellate tribunals are not appropriate fora for initial fact finding."); *see also* 38 U.S.C. § 7261(c).

For example, resolving these issues would require the Court to surmise which examination reports the Board implicitly considered adequate and probative and then, in the first instance, potentially review both medical examination reports to determine (1) whether, as argued by the appellant, they contain inconsistent findings regarding the presence of symptoms to satisfy the diagnostic criteria for PTSD or whether, as argued by the Secretary, the examination reports are adequate when read as a whole; and (2) whether the 2016 examiner provided an adequate rationale for finding no psychiatric diagnosis despite test results that showed the presence of the following symptoms: "anxious arousal, anxiety, depression, anger, intrusive experiences, defensive avoidance, dissociation, sexual disturbance[,] and tension reduction behavior." R. at 619; *cf.* R. at

1733 (Board finding the 2010 examiner's rationale inconsistent with the appellant's medical history because she stated that there was no diagnosis yet acknowledged chronic symptoms).

The Court may not resolve these factual disputes or evaluate their potential effect on the Board's findings. *See Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013) (holding "that the evaluation and weighing of evidence are factual determinations committed to the discretion of the factfinder—in this case, the Board"); *see also Hensley*, 212 F.3d at 1263. Thus, remand is warranted. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) ("[W]here the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy.").

Because the adequacy of the VA examinations remains an open issue and an additional or clarifying medical opinion may be ordered on remand, the Court notes that the question of whether a claimant may establish entitlement to disability compensation for a psychiatric disability based on symptoms and functional impairment absent a DSM diagnosis may become a moot issue.[4] *See Quirin v. Shinseki*, 22 Vet.App. 390, 395 (2009) (noting that "the Court will not ordinarily consider additional allegations of error that have been rendered moot by the Court's opinion or that would require the Court to issue an advisory opinion"). Additionally, because the lack of factual findings by the Board prevents the Court from reviewing whether the record has been adequately developed to assess the nature of the appellant's mental health condition, regardless of the diagnosis, *see Clemons*, 23 Vet.App. at 5 (explaining that an initial claim for benefits must be "considered a claim for any . . . disability that may reasonably be encompassed" by the claim), we decline to assess whether the Board erred by failing to address a potential theory of entitlement—a theory that was contrary to existing precedent at the time the Board rendered its decision—based on the current state of the record.[5] *See Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000) (holding that the

---

[4] Further, although the Board seemingly denied entitlement to disability compensation for a psychiatric disability other than PTSD due to the lack of a current disability, *see* R. at 3 (Finding of Fact), in its analysis, the Board appeared to suggest that the denial was based on the lack of nexus, *see* R. at 10 (stating that "[t]he competent and probative evidence of record does not *etiologically link* any psychiatric disorder to service or any incident during service[, and that] there is no contrary competent evidence showing it is at least as likely as not that any psychiatric disability is related to service") (emphasis added). Without clarity on what bases the Board denied disability compensation for a psychiatric disability other than PTSD, answering the legal question may be advisory. *See Waterhouse v. Principi*, 3 Vet.App. 473, 474-76 (1992).

[5] The Court further notes that the initial briefing as to this matter, which collectively amounts to 6 pages, does not fully explore this legal question. In that regard, it was only in the Secretary's notice of supplemental authority, which he filed 1 week prior to oral argument, that the issue of VA's regulations pertaining to service connection for PTSD, diagnoses of mental disorders, and VA's adoption of the DSM was first referenced. *See* 38 C.F.R. §§ 3.304(f),

8

Court "may hear legal arguments raised for the first time with regard to a claim that is properly before the [C]ourt, [but] it is not compelled to do so in every instance"); *Mariano v. Principi*, 17 Vet.App. 305, 318 (2003) (remanding a question of regulatory interpretation for the Secretary to answer in the first instance); *McCormick v. Gober*, 14 Vet.App. 39, 45 (2000) (remanding because Board determinations on certain enumerated questions would be helpful to the Court's review of the matter, would likely benefit the Court by producing better records for appellate review of a Board decision, and could result in VA self-correcting and amending its ways, which would protect VA administrative authority and promote judicial efficiency).

On remand, the appellant is free to submit additional evidence and argument on the remanded matter, including the specific arguments raised here on appeal, and the Board is required to consider any such relevant evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (stating that, on remand, the Board must consider additional evidence and argument in assessing entitlement to the benefit sought); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and the Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112.

### III. CONCLUSION

After consideration of the parties' pleadings, oral argument, and a review of the record, the Board's December 29, 2017, decision is VACATED and the matter is REMANDED for further proceedings consistent with this decision.

FALVEY, *Judge*, *concurring*, *in part, dissenting in part*: I join the Court's decision to remand Mr. Webb's PTSD claim. But I would address Mr. Webb's argument about a non-DSM

---

4.125(a), 4.130(a) (2019); *see generally Carbino v. Gober*, 10 Vet.App. 507, 511 (1997), *aff'd sub nom. Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) ("[I]mproper or late presentation of an issue or argument . . . ordinarily should not be considered."); *Woehlaert v. Nicholson*, 21 Vet.App. 456, 463 (2007). Unlike other cases in which the Court has exercised its discretion to hear late-raised arguments, *see, e.g.*, *Crumlich v. Wilkie*, 31 Vet.App. 194, 202 (2019) (addressing a late-raised argument where "the Court was presented with a compelling allegation that the regulation VA ask[ed the Court] to apply conflict[ed] with the appellant's statutory rights and the Secretary's concessions appeared to confirm that allegation" and the Court thereafter obtained a written response from the Secretary), we decline to do so under these circumstances.

diagnosis. I do not agree that a remand of the PTSD claim could moot the question of whether service connection may be granted absent a DSM diagnosis.

Mr. Webb doesn't just want compensation for PTSD or a different condition found in the DSM. Instead, he argues that VA must compensate him for any symptom even without a diagnosis. Even if Mr. Webb is eventually awarded service connection for a psychiatric disability diagnosed under the DSM, his dispute, and the implications of having his question about non-DSM eligibility go undecided, will not be resolved. At their core, the two are different issues.

At first blush it may seem that, because VA uses a uniform set of criteria for rating psychiatric disabilities, avoiding this question may be prudent and appropriate. But this is not so for several reasons. First, 38 C.F.R. § 4.126(d) requires that when a disability has been diagnosed as both a physical and a mental disorder, VA must evaluate it using the code that represents the more disabling aspect of the condition. Second, even if Mr. Webb is ultimately granted service connection for a DSM disability, he will be entitled to compensation for both the DSM and non-DSM disability symptoms only if VA cannot distinguish them. *See Mittleider v. West*, 11 Vet.App. 181, 182 (1998) (per curiam order) And third, other benefits may flow from whether Mr. Webb's symptoms are attributed to his service-connected disability or not. *See e.g.*, 38 U.S.C. 1310(a) (allowing for compensation in some cases for spouses, children, and parents of a veteran who died due to a service-connected disability). Thus, a grant for any DSM disability would not resolve all that Mr. Webb seeks from VA. And so, I would address the merits of his dispute about whether the Board's opinion conflicts with the definition of disability as articulated by the Federal Circuit decision in *Saunders v. Wilkie*, 886 F.3d 1356, 1363 (Fed. Cir. 2018).

What's more, because this question stems from a precedential decision of our reviewing Court that itself transformed existing precedent, it particularly deserves our attention. Even more so when the answer lies at the edges of our jurisdiction as it does here. If the rating schedule defines psychiatric disabilities based on the DSM, that definition may be beyond our jurisdiction. "Congress precluded [this] Court from 'review[ing] the schedule of ratings for disabilities adopted under section 1155 . . . or any action of the Secretary in adopting or revising that schedule.' 38 U.S.C. § 7252(b)." *Wingard v. McDonald*, 779 F.3d 1354, 1356 (Fed. Cir. 2015) (alterations in original). "The Federal Circuit and section 7252 are unequivocal in their language that this Court is precluded from reviewing the content of the rating schedule. . . [T]he Federal Circuit expressly

held that reviewing what should be considered a disability is no different from direct review of the content of the rating schedule." *Marcelino v. Shulkin*, 29 Vet.App. 155, 158 (2018).

Thus, even though I agree that the Board needs to provide better reasons or bases, I would also address whether it must consider service connection for a psychiatric disability absent a formal diagnosis under the DSM. This is an important question that can entitle Mr. Webb to greater benefits and he should have an answer from this Court or, if need be, the Federal Circuit.