﻿Citation Nr: AXXXXXXXX
Decision Date: 10/31/19 Archive Date: 10/31/19

DOCKET NO. 190513-8977
DATE: October 31, 2019

ORDER

Entitlement to service connection for a neck disability, to include as secondary to service-connected disabilities is granted.

Entitlement to a compensable rating for service-connected cervicogenic headaches from November 25, 2015 to February 22, 2019, is denied.

FINDINGS OF FACT

1. The Veteran’s neck disability is etiologically related to service, to include his service-connected headaches. 

2. The Veterans headaches were not “prostrating” in nature during the period on appeal.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a neck disability, to include as secondary to service-connected disabilities have been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § § 3.303, 3.304, 3.310.

2. The criteria for entitlement to a compensable rating for service-connected cervicogenic headaches Entitlement to a compensable rating for service-connected cervicogenic headaches from November 25, 2015 to February 22, 2019 have not been met. 38 U.S.C. § §§ 1155, 5107; 38 C.F.R. § § 4.124a, Diagnostic Code 8100.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from December 2007 to March 2010.

In August 2018, VA received the Veteran's opt-in selection of the supplemental claim lane of his appeal through RAMP. In a February 22, 2019 rating decision, the regional office considered the evidence of record up to that date, and denied the Veteran’s appeal. In March 2019, the Veteran requested a higher-level review of his appeal, and a decision was issued in April 2019. This decision was appealed to the Board in May 2019. Consequently, this case comes before the Board of Veterans' Appeals (Board) on appeal from the February 22, 2019 rating decision by the Department of Veterans Affairs (VA). As a result of the HLR election, only evidence of record at the time of the February 2019 rating decision will be considered. 

The Board notes that although the Veteran elected in March 2019 to have his appeal undergo a higher-level review, the election was mooted by the Veteran's earlier choice of the supplemental claim lane, which limits him to evidence of record until the February 2019 rating decision was issued. However, after the rating decision was issued, he instead chose to undergo direct review by the Board. Thus, the Board has jurisdiction to adjudicate this claim.

1. Entitlement to service connection for a neck disability, to include as secondary to service-connected disabilities

The Board finds that service connection is warranted for the Veteran’s neck disability.

The Veteran asserts that his neck disability began in service, as a result of being struck in the back of the head – the same injury underlying his service-connected headaches. In an August 2018 brief, the Veteran’s advocate iterates that he did not seek treatment in service because he did not want to cause any officers to lose rank or pay. After service, the Veteran did not have access to healthcare until he obtained a job as a nurse at a major medical center in 2013. At this point, he was able to see a neurologist for evaluation. 

First, the Board concludes that the Veteran has a current neck disability. Specifically, while the Veteran’s VA examination reports state he has no disability, this conclusion is based on an apparently lack of physical evidence in his images. However, a non-VA physical therapist notes in a January 2017 assessment the Veteran’s “significant upper cervical hypomobility” and the resulting cervicogenic headaches Because the Veteran suffers from neck pain which causes functional impairment, the Board finds that he has a current neck disability. See Saunders v. Wilkie, 886 F.3d 1356 (Fed. Cir. 2018).

Next, the Board observes the lack of notation of a neck disability in service records, and in his March 2010 separation examination report. Indeed, the Veteran’s service records make note of psychiatric complaints, but make little to no mention of a chronic neck disability. However, the Veteran credibly states that he suffered from neck symptoms since separation, but did not seek treatment until he was able to see a neurologist three years later. The Board notes that the Veteran is competent to assert a link between his head injury in service, his neck pain, and his headaches, especially due to his post-service nurse training. Accordingly, the Board finds the evidence in equipoise that the Veteran’s neck disability began in service when he was struck in the back of his head.

As for a medical nexus, the Veteran’s competent testimony indicates that he has had neck symptoms since service. Specifically, the Veteran states in August 2018 correspondence that the injury initially presented as pain in the occipital area above the cervical vertebrae and progressed to intermittent neurological symptoms in the arms – even while the Veteran is awake. He also attests to numbness caused by inadequate neck posture. The medical evidence also demonstrates an etiological connection between the Veteran’s neck disorder and his headaches. While his February 2019 VA examiner opined that the Veteran’s complaints are less likely than not related to his service-connected headaches, the opinion was based solely on a current disability not being found. Nonetheless, while the Veteran’s January 2017 non-VA physical therapist states the Veteran’s postural asymmetries and job status involving prolonged computer use “feed into” his history of neck pain, the Veteran’s advocate highlights the use of word “cervicogenic” to describe his service-connected headaches. Because “cervicogenic” means having its origin in a neck injury, it follows the Veteran’s headaches originate from structural neck damage. In fact, the Veteran’s physical therapist states in the same January 2017 record that the Veteran’s neck disability results in cervicogenic headaches, which are service-connected. Since the headaches are service connected, the neck pain that causes them should be service-connected as well. 

Regardless of the medical evidence, the Veteran is competent to report observable symptomatology of an injury, to include recurring neck pain. Barr v. Nicholson, 21 Vet. App. 303, 307-08 (2007). Moreover, the Veteran and his representative credibly attest that the Veteran’s training as a hospital employee renders him at least minimally competent to describe the origins of his neck disability. Thus, the fact that the Veteran’s disability wasn’t detected on his imaging does not negate his competent and credible reports of pain and functional impairment since service. 

The Board finds that the Veteran’s competent and credible statements of neck pain with functional impairment since service place his appeal at least in equipoise. Accordingly, the Board resolves reasonable doubt in the Veteran’s favor and grants service connection for a neck disability. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

2. Entitlement to a compensable rating for service-connected cervicogenic headaches from November 25, 2015 to February 22, 2019

However, the Board finds that a compensable rating for service-connected cervicogenic headaches is not available for the appeal period.

The Veteran seeks an increased initial disability rating for cervicogenic headaches, presently rated as noncompensable for all periods on appeal. 

In a July 2018 rating decision, the Veteran was service connected for this disability. Because the code does not have a rating for cervicogenic headaches specifically, a noncompensable rating was assigned by analogy under 38 C.F.R. § § 4.124a, Diagnostic Code 8100 (addressing migraine headaches). 

Under the applicable diagnostic criteria, a noncompensable rating is assigned for migraines with less frequent attacks. A 10 percent rating is assigned with characteristic prostrating attacks averaging one in 2 months over the last several months. A 30 percent rating is assigned for migraines with characteristic prostrating attacks occurring on an average once a month over the last several months. Finally, a 50 percent rating is assigned for migraines with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. 38 C.F.R. § § 4.124a, DC 8100.

The rating criteria do not define “prostrating,” nor has the United States Court of Appeals for Veterans Claims (Court). Cf. Fenderson v. West, 12 Vet. App. 119 (1999) (in which the Court quotes Diagnostic Code 8100 verbatim but does not specifically address the matter of what is a prostrating attack). However, the Board notes that, according to WEBSTER’S NEW COLLEGE DICTIONARY 909 (3d ed. 2008), “prostration” is defined as “complete exhaustion.” Similarly, DORLAND’S ILLUSTRATED MEDICAL DICTIONARY 1554 (31st ed. 2007) defines “prostration” as “extreme exhaustion or powerlessness.” 

The next higher 10 percent rating, and all higher ratings, require a showing of “prostrating attacks” causing extreme exhaustion or powerlessness. After careful review, the Board finds that the noncompensable rating should be upheld. 

While the Veteran attests to chronic pain from headaches in his August 2018 brief, the evidence does not show extreme exhaustion or powerlessness. A January 2017 record shows that the Veteran’s headaches ranged in severity from 1 to 2 out of 10, to 7 out of 10 at worst. At his June 2018 Compensation and Pension examination, the Veteran stated that his headache worsened since January 2017. Specifically, he suffered from daily global, dull, and aching headaches. Elaborating, he told the examiner that the pain would “wax and wane” in strength. Two months later, in an August 2018 statement, the Veteran informed VA that his headaches mostly ranged from 1-4 out of 10, lasting all day and not mitigated by over-the-counter doses of medication. Notably, he mentioned the intensity spiking to 9 or 10 out of 10 for only a few seconds, but knocking the wind out of him. While he may have been powerless momentarily, these symptoms do not rise to the “extreme exhaustion or powerlessness” cited in the above medical literature. Furthermore, the Veteran mentioned that the headache pain would spike at least once monthly, but sometimes with great frequency. This too, does not imply prostrating attacks. 

The Board finds that the evidence does not support a compensable rating for migraine headaches. Here, the Board notes that a “prostrating” attack implies extreme weakness and powerlessness due to headaches. While his headaches do interfere with his ability to work, they are not of the prostrating variety. Absent evidence of prostrating attacks of headaches, even the schedular minimum compensable rating cannot be assigned. 

The Board has also reviewed the Veteran’s claims file, to include his medical treatment records, but has found nothing to imply prostrating attacks of migraines. As the Veteran’s migraines are not prostrating in nature, a compensable rating is not supported by the evidence and an increased rating must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine; however, because the preponderance of the evidence is against the claim, that doctrine does not apply. See 38 U.S.C. §§ 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 C.F.R. § § 3.102. 

In considering the appropriate disability rating, the Board has also considered the Veteran’s statements that his cervicogenic headaches are worse than the ratings he currently receives. While the Veteran’s healthcare training, as well as his personal observation via his senses, make him competent to report his symptoms, he is not competent to identify a specific level of disability of his service-connected disabilities according to the appropriate diagnostic codes. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) (“although interest may affect the credibility of testimony, it does not affect competency to testify”). Consequently, the Board affords the Veteran’s assertions less probative weight when determining the appropriate disability rating.

On the other hand, such competent evidence concerning the nature and extent of the Veteran’s disabilities has been provided by the medical personnel who have examined him during the current appeal and who have rendered pertinent opinions in conjunction with the evaluations. The medical findings (as provided in the examination reports) directly address the criteria under which these disabilities are evaluated.

The Board also finds that consideration for an extraschedular evaluation, a component of a claim for an increased rating, is not warranted. Bagwell v. Brown, 9 Vet. App. 337, 339 (1996). Although the Board may not assign an extraschedular rating in the first instance, it must specifically adjudicate whether to refer a case for extraschedular evaluation when the issue either is raised by the claimant or is reasonably raised by the evidence of record. Barringer v. Peake, 22 Vet. App. 242 (2008).

In considering whether an extraschedular rating may be warranted, VA must first determine whether the available applicable schedular rating criteria are inadequate because they do not contemplate the Veteran’s level of disability and symptomatology. If the rating criteria are inadequate, VA must then determine whether the Veteran exhibits an exceptional disability picture indicated by other related factors such as marked interference with employment or frequent periods of hospitalization. If such related factors are exhibited, then referral must be made to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for extraschedular consideration. See Thun v. Peake, 22 Vet. App. 111 (2008).

In this case, the evidence does not indicate that the Veteran’s disability picture could not be adequately contemplated by the applicable schedular rating criteria discussed above. In making this conclusion, the Board notes the Veteran’s contentions that the ability to work with others needed for his employment is impaired by his headache disability. However, the evidence does not indicate, nor does the Veteran contend, that the headaches create marked interfere with employment. In addition, the record does not reflect hospitalizations for the Veteran’s headaches. Accordingly, these factors do not merit referral to be considered for extraschedular ratings.

Lastly, a total disability rating based on individual unemployability (TDIU) is not for consideration. The Veteran does not contend, and the evidence does not show, that his service-connected disabilities render him unemployable. Rice v. Shinseki, 22 Vet. App. 447 (2009); see also Jackson v. Shinseki, 587 F.3d 1106 (Fed. Cir. 2009). Accordingly, consideration for a TDIU rating is not warranted.

Of final note, the Veteran has not raised any other issues, nor have any other issues been reasonably raised by the record, for the Board’s consideration. See Doucette v. Shulkin, 28 Vet. App. 366, 369-370 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record). The Board’s decision in this case is binding only with respect to the instant matters decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § § 20.1303. The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.

 

 

B.T. KNOPE

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Z. Maskatia, Associate Counsel