﻿Citation Nr: AXXXXXXXX
Decision Date: 11/27/19 Archive Date: 11/27/19

DOCKET NO. 180713-194
DATE: November 27, 2019

ORDER

Service connection for an acquired psychiatric disorder, diagnosed as anxiety and an alcohol use disorder, is granted.

Service connection for a hip disorder is denied.

Service connection for a low back disorder is denied.

Service connection for a left knee disorder is denied. 

Service connection for a right knee disorder is denied.

Service connection for bilateral hearing loss is denied.

Service connection for tinnitus is denied.

FINDINGS OF FACT

1. The Veteran has an anxiety disorder that is at least as likely as not related to in-service stressors; he also has an alcohol use disorder that is related to his anxiety disorder.

2. None of the competent and credible evidence indicates that the Veteran has a disability of the hips, low back, or left knee that may be associated with service.

3. The preponderance of the evidence is against a finding that the Veteran’s current right knee disability began in service or is otherwise related to service.

4. The available evidence does not establish that the Veteran has had a hearing loss “disability” as defined by VA regulation at any time during or proximate to the pendency of his claim.

5. The Veteran’s tinnitus was not shown as chronic in service and did not manifest to a compensable degree within the applicable presumptive period; continuity of symptomatology is not established and the disability is not otherwise shown to be etiologically related to an in-service injury or disease.

CONCLUSIONS OF LAW

1. Resolving reasonable doubt in the Veteran’s favor, the criteria for an award of service connection for an acquired psychiatric disorder, diagnosed as anxiety and an alcohol use disorder, have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.310.

2. The criteria for an award of service connection for a hip disability have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303.

3. The criteria for an award of service connection for a low back disability have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303.

4. The criteria for an award of service connection for a left knee disability have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303.

5. The criteria for an award of service connection for a right knee disability have not been met. 38 U.S.C. §§ 1110, 1112, 1113, 1137, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

6. The criteria for an award of service connection for bilateral hearing loss have not been met. 38 U.S.C. §§ 1110, 1112, 1113, 1137, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385.

7. The criteria for an award of service connection for tinnitus have not been met. 38 U.S.C. §§ 1110, 1112, 1113, 1137, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Marine Corps from May 2007 to June 2008, and from May 2009 to June 2010, to include service in Iraq. He also had service in the United States Marine Corps Reserve, to include an initial period of active duty for training from January 2006 to July 2006. His decorations include the Global War on Terrorism Service Medal and the Iraq Campaign Medal.

This matter arises from an August 2015 rating decision issued by the Department of Veterans Affairs (VA) Regional Office in San Diego, California. In September 2015, the Veteran submitted a notice of disagreement with the August 2015 rating decision. In April 2018, he elected review in the modernized review system. 38 C.F.R. § 19.2(d). 

The Veteran selected the Supplemental Claim lane when he opted into the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. Following a denial of his claim on Supplemental Review in May 2018, the Veteran elected to appeal to the Board of Veterans’ Appeals (Board) under RAMP’s Hearing option in July 2018.

In May 2019, the Veteran and his spouse testified at a Board hearing before the undersigned Veterans Law Judge. A transcript of the hearing has been associated with the record.

Under the AMA, the Veteran had 90 days from the date of the May 2019 hearing to submit any additional evidence. In August 2019, the Veteran requested a 90-day extension to submit additional evidence; however, there is no authority under the AMA for affording the Veteran an extension of time to submit additional evidence beyond the initial 90-day period following the Board hearing. Accordingly, and because the 90-day period since the May 2019 Board hearing has expired, the Board will proceed to decide the appeal based on the evidence of record.

Thus far, the RO has limited its consideration of the Veteran’s psychiatric claim to the matter of his entitlement to service connection for PTSD. However, the evidence shows that he has been diagnosed with psychiatric disorders other than PTSD, namely, an anxiety disorder and an alcohol use disorder. Under the circumstances, the Board finds that the Veteran’s claim should be expanded. See, e.g., Clemons v. Shinseki, 23 Vet. App. 1 (2009) (indicating that a veteran’s claim for service connection for psychiatric symptoms should not be limited to consideration of a specific diagnosis where the pleadings and evidence suggest a claim of broader scope).

In arriving at the conclusions set forth below, the Board has relied only on that evidence which is permitted to be reviewed under the modernized review system, to include any evidence received during the Veteran’s Board hearing and the 90-day submission window following that hearing. The Board intimates no opinion, either factual or legal, with respect to whether entitlement might be warranted based on evidence received subsequent to that.

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004).

If a Veteran serves 90 days or more of active, continuous service after December 31, 1946, and manifests certain chronic diseases, including sensorineural hearing loss and tinnitus, to a degree of 10 percent or more during the one-year period following his separation from that service, service connection for the condition may be established on a presumptive basis, notwithstanding that there is no in-service record of the disorder. See 38 U.S.C. §§ 1112, 1113; 38 C.F.R. §§ 3.307, 3.309.

Service connection may also be established under 38 C.F.R. § 3.303(b) by (a) evidence of (i) a chronic disease shown as such in service (or within an applicable presumptive period under 38 C.F.R. § 3.307) and (ii) subsequent manifestations of the same chronic disease, or (b) if the fact of chronicity in service in not adequately supported, by evidence of continuity of symptomatology. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

A layperson is generally incapable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183, 186 (1997), aff'd sub nom., Routen v. West, 142 F.3d 1434 (Fed. Cir. 1998). However, lay evidence can be competent and sufficient to establish a diagnosis of a condition when: (1) a layperson is competent to identify the medical condition, (e.g., a broken leg, separated shoulder, pes planus (flat feet), varicose veins, tinnitus (ringing in the ears), etc.), (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007).

In essence, lay testimony is competent when it pertains to the readily observable features or symptoms of injury or illness and “may provide sufficient support for a claim of service connection.” Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also 38 C.F.R. § 3.159(a)(2). A determination as to whether medical evidence is needed to demonstrate that a Veteran presently has the same condition he or she had in service or during a presumptive period, or whether lay evidence will suffice, depends on the nature of the Veteran's present condition (e.g., whether the Veteran's present condition is of a type that requires medical expertise to identify it as the same condition as that in service or during a presumption period, or whether it can be so identified by lay observation). See Barr v. Nicholson, 21 Vet. App. 303, 310 (2007).

Thus, medical evidence is not always or categorically required when the determinative issue involves either medical diagnosis or etiology, but rather such issue may, depending on the facts of the particular case, be established by competent and credible lay evidence under 38 U.S.C. § 1154(a). See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

1. Service connection for an acquired psychiatric disorder is granted.

The Veteran seeks to establish service connection for an acquired psychiatric disorder. He has asserted that he has posttraumatic stress disorder (PTSD) as a result of in-service stressors. Specifically, he has reported an incident were a young Marine died during a remediation fitness test. See April 2018 VA Form 21-0781. The Veteran also reported an incident where two cars caught fire, which caused huge explosions resulting in casualties, in addition to witnessing a person get shot and killed. See November 2016 VA examination report; May 2019 Board hearing transcript.

The November 2016 VA examiner diagnosed the Veteran with anxiety and an alcohol use disorder. The examiner opined that the Veteran’s anxiety was at least as likely incurred in or caused by service. The examiner explained that, while the Veteran did not meet the criteria for a diagnosis of PTSD, his anxiety was due to his reported military stressors of being poorly trained, witnessing an indirect mortar attack, witnessing casualties due to explosions from a fire, witnessing a person get shot and killed, and witnessing a friend get hurt. The examiner noted that the Veteran’s anxiety caused nervousness and that alcohol use helped him to relax and cope with his anxiety. 

The Board finds the November 2016 VA opinion highly probative because the examiner reviewed the claims file, discussed the relevant evidence, and provided a thorough supporting rationale for the conclusions reached. Barr, 21 Vet. App. 303; Stefl v. Nicholson, 21 Vet. App. 120 (2007); Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). 

As such, the Board resolves the doubt in favor of the Veteran and finds that his currently diagnosed anxiety disorder is related to service, and that his alcohol use disorder is related to his anxiety. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. 49 (1990). Therefore, service connection for an acquired psychiatric disorder, to include anxiety and an alcohol use disorder, is granted. 

This constitutes a full grant of the claim on sought on appeal. The above-referenced acquired psychiatric disorders contemplate all of the Veteran’s psychiatric symptoms and resulting occupational and social impairment. See 38 C.F.R. § 4.130. 

2. Service connection for a hip disorder is denied.

3. Service connection for a low back disorder is denied.

4. Service connection for a left knee disorder is denied.

The Veteran seeks to establish service connection for a hip disorder, a low back disorder, and a left knee disorder. 

The existence of a current disability is the cornerstone of a claim for VA disability compensation. 38 U.S.C. §§ 1110, 1131; see Degmetich v. Brown, 104 F.3d 1328, 1332 (1997). In the absence of proof of a present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). 

The requirement of a current disability is satisfied when the claimant is shown to have the disability either at the time the Veteran files his or her claim for service connection, or during the pendency of that claim, even if the disability resolves prior to final adjudication. McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). When the record contains a recent diagnosis of disability prior to the filing of a claim for benefits based on that disability, the report of diagnosis is relevant evidence that must be addressed in determining whether a current disability existed at the time the claim was filed or during its pendency. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013).

The term “disability” as used for VA purposes contemplates functional impairment resulting in loss of earning capacity. See 38 C.F.R. § 4.1; Saunders v. Wilkie, 886 F.3d 1356 (Fed. Cir. 2018).

In the present case, the Board finds, as an initial matter, that it is not entirely clear whether has current disabilities of the hips, low back, or left knee, or has had such disabilities at any time during the pendency or proximate to the filing of his claims. 38 U.S.C. §§ 1110, 1131, 5107(b), 38 C.F.R. § 3.303(a), (d).

In November 2017, the Veteran underwent a VA examination of the knees, which indicated that while he had a right knee disability, he did not have a left knee disability. In addition, although VA treatment records contain reports of bilateral hip, low back, and left knee pain, the records contain no diagnoses or descriptions of functional impairment related to the hip, low back, or left knee during the pendency of the claim.

Even assuming arguendo that the Veteran has such disabilities, none of the competent and probative evidence indicates that the disabilities may be associated with service.

The Veteran’s service treatment records are completely devoid of any mention of problems associated with his hips, low back, or left knee. In fact, service treatment records during the Veteran’s active duty and reserve service reflect that the Veteran consistently denied having such problems. A November 2009 post-deployment health assessment shows that he denied a history of muscle aches, swollen or painful joints, or back pain. See also March 2010 post-deployment health assessment. A September 2010 Reserve service treatment record shows that the Veteran denied having any painful joints. Similarly, reserve service treatment records dated in 2011, 2012, and 2013 show that the Veteran denied swollen or painful joints, as well as back trouble, injury, or trauma. To the extent that the Veteran is claiming continuity of symptoms since service, his statements in that regard appear to be inconsistent with representations made in service. 

While the Veteran may believe that he suffers from disabilities of the hips, low back, and left knee that are related to service, he is not competent to diagnose any of the above-referenced disabilities, or to otherwise provide a nexus opinion in this case. As a lay person, he is not shown to have the requisite medical knowledge, training, or experience to be able to render a competent diagnosis of any of the above-referenced disabilities, or to proffer a competent opinion regarding the matter of whether his currently claimed conditions can be attributed to injuries or training years earlier. Jandreau, 492 F.3d at 1377 n.4.

The Board acknowledges that the Veteran has not been afforded VA examinations with respect to these particular claims. However, in the absence of any competent and probative evidence indicating that the claimed disabilities may be associated with service, an examination is not required. See Waters v. Shinseki, 601 F.3d 1274, 1278 (2010).

Because, the preponderance of the evidence is against the claims, the benefit of the doubt rule is not for application, and the claims must be denied. 38 U.S.C. § 5107(b); Gilbert, supra.

5. Service connection for a right knee disorder is denied.

The Veteran seeks to establish service connection for a right knee disorder. He asserts that his right knee disability is related to service. 

A December 2016 VA examination report shows a diagnosis of right knee strain. As such, the first element of service connection has been met. 

A May 2006 service treatment record shows that the Veteran reported right knee pain for two weeks. Upon examination, the clinician noted knee joint swelling on the right medially and made an assessment of right knee pain. A November 2009 service treatment record noted that the Veteran complained of right knee pain during cold weather. However, a November 2009 post-deployment health assessment shows that the Veteran denied a history of muscle aches or swollen or painful joints. See also March 2010 post-deployment assessment. A September 2010 reserve service treatment record shows that the Veteran denied having any painful joints, and reserve service treatment records dated in 2011, 2012, and 2013 show that the Veteran consistently denied swollen or painful joints. 

A December 2017 VA examiner opined that the claimed condition was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The examiner reasoned that a May 8, 2006 service treatment record, noted right knee pain for two weeks without any reported trauma, and physical examination was negative for swelling; that a 2010 post-deployment survey was negative for knee pain; that a March 24, 2011 medical history form was negative for knee pain; and that a July 26, 2013, treatment record noted that he ran 5-10 miles a day. The examiner explained that, while the Veteran complained of right knee pain in 2006, it did not appear to be a serious or chronic condition because he had a relatively normal knee examination and the only abnormality found was tenderness. The examiner noted that the Veteran was seen various times throughout the years after the 2006 reported knee condition, and did not mention any knee problems on various examinations and post-deployment surveys. The examiner also noted that the Veteran had a history of repetitive running since getting out of the military, which could possibly be a contributing factor to his current knee condition. The examiner found it unusual that the Veteran would have been able to complete boot camp and specialty training if he had a serious knee problem at that time.

The December 2017 VA examiner’s opinion is probative, because it is based on an accurate medical history and provides an explanation that contains clear conclusions and supporting data. Nieves-Rodriguez, 22 Vet. App. at 304. There are no medical opinions to the contrary.

While the Veteran believes that his current right knee disability is related to service, he is not competent to provide a nexus opinion in this case. As a lay person, he is not shown to have the requisite medical knowledge, training, or experience to be able to render a competent opinion regarding the matter of whether his current condition can be attributed to injuries or episodes of pain years earlier. Jandreau at 1377 n.4. 

The record, to include the December 2016 VA examination report, demonstrates that the Veteran does not have arthritis of the right knee. Accordingly, the presumptive service connection for provisions under 38 C.F.R. §§ 3.303(b) and 3.309(b) are not applicable. There is otherwise no competent and probative evidence that the Veteran’s current right knee disability was manifested to a degree of 10 percent or more within one year of separation from service, or that it is otherwise related to service. As such, service connection on a direct and presumptive basis is not warranted.

Because, the preponderance of the evidence is against the claim, the benefit of the doubt rule is not for application, and the claim must be denied. 38 U.S.C. § 5107(b); Gilbert, supra.

6. Service connection for bilateral hearing loss is denied.

The Veteran seeks to establish service connection for bilateral hearing loss. 

The question for the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that the Veteran does not have a current hearing loss disability and has not had one at any time during the pendency or proximate to the filing of the claim. Romanowsky, 26 Vet. App. at 294; McClain, 21 Vet. App. at 321.

Specific to claims for service connection for hearing loss, impaired hearing is considered a “disability” for VA purposes only when the auditory threshold in any of the frequencies of 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; when the thresholds for at least three of these frequencies are 26 decibels or greater; or when speech recognition scores using the Maryland CNC test are less than 94 percent. 38 C.F.R. § 3.385. 

In February 2017, the Veteran underwent VA audiometric testing in connection with the claim currently on appeal. He was found to have puretone thresholds of 10, 15, 10, 10, and 10, and 10, 15, 10, 15, and 100 decibels in the right and left ear, respectively, at 500, 1000, 2000, 3000, and 4000 Hertz. His speech discrimination (Maryland CNC) scores were 96 percent in the right ear and 98 percent in the left ear.

There is nothing to suggest that the Veteran’s auditory acuity decreased subsequent to the February 2017 VA examination, and prior to May 30, 2018 (when the denial on Supplemental Review was entered) so as to warrant re-examination as part of a pre-decisional duty to assist error. No other audiometric evidence has been received in connection with his claim for benefits.

In light of the foregoing, the Board must conclude that the preponderance of the evidence is against the Veteran’s claim. Simply put, the evidence does not establish that the Veteran has ever had a hearing loss disability of either ear as defined by VA regulation. 38 C.F.R. § 3.385.

The Board notes that the Veteran is competent to report a history of in-service noise exposure and current problems with decreased auditory acuity. See 38 C.F.R. § 3.159(a)(2); Washington v. Nicholson, 19 Vet. App. 362, 368 (2005); Layno, 6 Vet. App. at 469-70. However, the presence of a hearing loss “disability” for VA purposes is not a simple medical condition capable of lay observation or diagnosis; rather, such a finding requires professionally administered test results satisfying the criteria set out at 38 C.F.R. § 3.385. In the absence of such evidence, service connection for bilateral hearing loss must be denied.

7. Service connection for tinnitus is denied.

The Veteran seeks to establish service connection for tinnitus. He asserts that his tinnitus is related to service.

The Board finds that the Veteran currently has tinnitus. He has credibly reported that he has the condition. The February 2017 VA examination report noted a diagnosis of tinnitus based on the Veteran’s reports of recurrent tinnitus. See Charles v. Principi, 16 Vet. App. 370, 374 (2002) (“ringing in the ears is capable of lay observation”). 

The Board also finds that the Veteran had in-service noise exposure. The Veteran has credibly reported that during his deployments to Iraq, his berthing site was next to the flight line, which was very loud. He also advanced that he was exposed to loud noise from guns when he qualified for firearms twice per year during service. See, e.g., May 2019 Board hearing transcript. The Veteran’s DD Form 214 shows that his military occupational specialty (MOS) was a logistics system operator, which is associated with a moderate probability of hazardous noise exposure. See Veterans Benefits Administration (VBA) Fast Letter 10-35 (September 2, 2010) (modifying the development process in claims for hearing loss and/or tinnitus). Based on the foregoing, the Board finds that the Veteran was exposed to acoustic trauma during service.

The question before the Board is whether there is a nexus, or link, between the Veteran’s tinnitus and any event, injury, or disease in service, to include his conceded in-service exposure to noise.

A February 2017 VA examiner opined that the Veteran’s tinnitus was less likely than not caused by or a result of military noise exposure. The examiner reasoned that the Veteran reported that his tinnitus was first noticed a few months earlier, more than five years after his discharge from active duty service. The examiner further explained that post-deployment health assessments dated March 11, 2008, and November 16, 2009, show that the Veteran answered “no” to queries regarding the presence of tinnitus.

The Veteran has not claimed to have had ringing in his ears on a continuous or recurring basis since service. To the contrary, as noted, upon examination in February 2017, the Veteran indicated that the onset of noticeable tinnitus symptoms was more than 5 years after leaving active duty service.

While the Veteran is competent to testify as to the onset, presence, and continuity of tinnitus symptoms, which are observable by a lay person, he has not claimed that his current tinnitus symptoms had their onset in service or that he has had continuity of tinnitus symptoms since that time. Nor is there any evidence that tinnitus was manifested to a compensable degree within one year of service.

Based on the foregoing, the Board finds that the preponderance of the evidence demonstrates that the Veteran’s tinnitus is not causally or etiologically related to service. The claim for service connection for tinnitus must, therefore, be denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102. 

 

DAVID A. BRENNINGMEYER

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. Ragheb, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.