﻿Citation Nr: AXXXXXXXX
Decision Date: 05/29/20 Archive Date: 05/29/20

DOCKET NO. 190510-9077
DATE: May 29, 2020

ORDER

The claim of entitlement to service connection for a left knee disorder is denied.

REMANDED

The claim of entitlement to service connection for an acquired psychiatric disorder, diagnosed as bipolar disorder with cannabis and alcohol abuse and a personality disorder, is remanded.

FINDING OF FACT

The probative evidence is against a finding that the Veteran has a left knee disability that is related to his military service.

CONCLUSION OF LAW

1. The criteria for service connection for a chronic left knee disorder are not met. 38 U.S.C. §§ 1110, 1112, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2019)

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from November 2007 to November 2011. 

These matters come before the Board of Veterans’ Appeals (Board) on appeal from a March 2016 rating decision which denied service connection for a bipolar disorder and for a left knee condition. As for the mental health claim, the Board has re-characterized the claim as it appears on the cover page. See Clemons v. Shinseki, 23 Vet. App. 1 (2009).

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in the VA’s test program, RAMP, the Rapid Appeals Modernization Program.

As already noted, this matter originated with the appeal of a March 2016 rating decision by a by a Regional Office (RO) of the United States Department of Veterans Affairs (VA), which denied service connection for an acquired psychiatric disorder and for a left knee disorder. The Veteran initiated and perfected an appeal in the traditional manner, but in August 2018 opted to take part in the RAMP program. 

He withdrew the pending Legacy appeal and selected the Supplemental Claim lane when he submitted the RAMP election form. Accordingly, the March 2019 RAMP rating decision considered the evidence of record prior to the issuance of the RAMP rating decision. The Veteran timely appealed this RAMP rating decision to the Board of Veterans’ Appeals (Board) and requested direct review of the evidence considered by the Agency of Original Jurisdiction, (AOJ). Direct review entails adjudication on an identical record; no additional development takes place. The Board notes that the Veteran submitted additional evidence after he received notice of the AOJ decision. See October 2019 Correspondence. However, as he selected the direct review option, the Board may not consider this evidence. 38 C.F.R. § 20.300 (2019). The Veteran may file a Supplemental Claim and submit or identify this evidence after a final decision on his claim is made. 38 C.F.R. § 3.2501 (2019). If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Under the AMA, and consequently under RAMP, the Board is bound by favorable findings made by the RO.

The Board notes that the March 2019 Supplemental Claim decision indicated both that new and relevant evidence needed to consider the merits of the claims was required and presumed submitted, and that such was not received. However, as the RO did proceed to consider the merits of the claims, the Board has characterized the issues to reflect receipt of new and relevant evidence at the RO level, and direct appeal of the underlying service connection claims to the Board.

Service Connection

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service. 38 U.S.C. §§ 1110 (wartime), 1131 (peacetime). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2019).

In order to establish service connection on a direct basis, the record requires competent evidence showing: (1) the existence of a present disability; (2) in service incurrence or aggravation of an injury or disease; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). In the absence of proof of a present disability there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). 

Some chronic diseases may be presumed to have been incurred in service, if they become manifest to a degree of ten percent or more within the applicable presumptive period. 38 U.S.C. §§ 1101(3), 1112(a) (2012); 38 C.F.R. §§ 3.307(a), 3.309(a) (2019). For those listed chronic conditions, a showing of continuity of symptoms affords an alternative route to service connection. 38 C.F.R. § 3.303(b) (2019); Walker v. Shinseki, 708 F. 3d 1331 (Fed. Cir. 2013). Arthritis and organic diseases of the nervous system, each with a presumptive period of one year following separation from service, are listed conditions.

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also include statements conveying sound medical principles found in medical treatises. It also includes statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1) (2019). Competent lay evidence is any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2) (2019). This may include some medical matters, such as describing symptoms or relating a contemporaneous medical diagnosis. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011). A layperson is generally not capable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183, 186 (1997). See also Bostain v. West, 11 Vet. App. 124, 127 (1998).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107 (2012); 38 C.F.R. § 3.102 (2019); see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Claim of Entitlement to Service Connection for a Left Knee Disorder.

The Veteran asserts that he has a left knee disability that began during his military service. For the reasons that follow, the Board finds that the preponderance of the evidence is against service connection for such. 

During service, the Veteran was seen in September 2011, for various complaints, to include joint pains in the knees. When examined by VA in March 2016, the Veteran stated that his left knee complaints began in 2011 after stepping into a hole in the ground. Examination of the left knee, to include range of motion testing, was reported as normal, although knee strain was noted. X-ray showed small knee joint effusion. In a March 2019 addendum report, it was specifically opined by a VA physician that the knee strain reported in 2016 was not supported by the completely normal findings upon VA examination at that time. There was no documented inservice knee injury or a post service knee injury. The left knee was normal. 

As an initial matter, the Board finds the evidence against a finding that the Veteran has a left knee disability for service connection purposes, to include after review of his medical treatment records and a VA knee examination and addendum report. Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. See 38 U.S.C. § 1131 (2019). In the absence of proof of a current diagnosis of the claimed disability, service connection for that disability cannot be established. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). 

The Board acknowledges the recent holding in Saunders v. Wilkie, 886 F.3d 1356 (Fed. Cir. 2018), which held that, where pain alone that results in functional impairment can constitute a disability, even if there is no identified underlying diagnosis. However, subjective pain in and of itself will not establish a current disability. Instead, the pain must reach the level of functional impairment of earning capacity. Saunders, 886 F.3d at 1364-68. Aside from the Veteran’s subjective reports of knee pain, physical examination of the left knee during the available VA examination was normal and functional loss was not observed. Importantly, the examiner specifically opined that there was no functional limitation associated with the knee and that the Veteran continued to run for exercise. 

As such, the Veteran’s left knee claim must be denied. There is no reasonable doubt to be resolved in the Veteran’s favor. 38 C.F.R. § 3.102 (2019). 

REASONS FOR REMAND

Entitlement to Service Connection for an Acquired Psychiatric Disorder, Diagnosed as Bipolar Disorder with Cannabis and Alcohol Abuse and a Personality Disorder, is remanded.

The Veteran contends that he has an acquired psychiatric disorder of service origin. There was no report of a psychological condition at time of service entry. After a review of the record the Board finds that the issue must be remanded to correct a pre-decisional duty to assist error; specifically, to obtain an adequate etiology opinion. 

In September 2011, he reported trouble sleeping, and staying asleep. He had a quick temper and headaches. No chronic mental health disorder was noted at that time or at any time during service. These records also show that he was found to be intoxicated on more than one occasion during service, to include at the base gate on one occasion. At that time, he was handcuffed by Provost Marshall’s Office (PMO) personnel. In post service records, he self-reported drinking too much on occasion during service as well as getting into fights with others. 

Post service private and VA records reflect treatment in 2013 and thereafter for psychiatric complaints. At VA in January 2013, the provisional diagnoses included adjustment disorder and personality disorder. On a February 2013 private report (and on other occasions), he gave a history of being treated for psychiatric complaints as a child and being diagnosed with bipolar disorder and attention deficit hyperactivity disorder (ADHD). In a June 2013 VA report, the diagnoses were bipolar disorder, alcohol abuse, and antisocial personality disorder vs. narcissistic personality disorder. 

When examined by VA in March 2016, the Veteran gave a history of a difficult childhood, to include multiple foster homes. Prior to service, he used cannabis, but very little alcohol. That became more of a problem post service. Following evaluation, the diagnoses were bipolar disorder and alcohol and cannabis abuse. He stated that the consensus among previous treatment providers also included a personality disorder. The VA examiner expressed an opinion regarding the etiology of the condition but did not adequately address whether there was clear and unmistakable evidence that any acquired psychiatric condition existed prior to service and/or was not aggravated during service. This is a higher, “onerous” evidentiary standard that must be met by VA. Instead, the examiner stated that behavioral history “strongly suggests” the presence of one of four different psychiatric conditions. This opinion does not meet the needed clear and unmistakable evidentiary standard needed to rebut the presumption of soundness. Moreover, the examiner stated the pre-existing condition could be one of four different conditions. This too does not meet the higher evidentiary standard to rebut the presumption of soundness. Further, as to whether any pre-existing disability was aggravated by service, the examiner expressed opinions in terms of “less likely than not.” This is a lower evidentiary standard than the required clear nad unmistakable evidence needed that the disability was not aggravated by service. Thus, a new examination and opinion within the correct legal standard are necessary. 

This matter is REMANDED for the following action:

Arrange to have the Veteran scheduled for a VA examination either in person or via telehealth as may be appropriate, for purposes of assessing the nature and etiology of any acquired psychiatric disorder(s) that may be present. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed.

The examiner is requested to review all pertinent records associated with the claims file, including the Veteran’s service treatment records (STRs), post-service medical records, and assertions. It should be noted that the Veteran is competent to attest to matters of which he has first-hand knowledge, including observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should identify all current psychiatric disorders. If any previously diagnosed psychiatric disorders are not found on examination (to include, for example, bipolar disorder with substance abuse), the examiner should address whether such disorders were misdiagnosed or have resolved.

(a) For each diagnosis identified other than personality disorder, the examiner should provide an opinion as to whether the disorder clearly and unmistakably preexisted the Veteran’s entry into service.

(b) For each psychiatric disorder that clearly and unmistakably preexisted the Veteran’s active duty service, the examiner should state, further, whether there is clear and unmistakable evidence that there was no permanent increase in disability during service and whether it is clear and unmistakable that any such increase in disability was due to the natural progress of the preexisting condition.

(c)For each psychiatric disorder that did not clearly and unmistakably preexist the Veteran’s active duty service, the examiner should state whether it is at least as likely as not (i.e., whether there is a 50 percent or greater probability) that the disorder manifested in or is otherwise causally or etiologically related to his military service.

(d) If the Veteran is diagnosed with a personality disorder, the examiner should state whether there was a superimposed disease or injury that occurred during service.

A clear rationale for all opinions expressed must be provided.

 

 

 

E. I. VELEZ

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board T. Hal Smith, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.