Citation Nr: AXXXXXXXX
Decision Date: 07/14/21 Archive Date: 07/14/21

DOCKET NO. 190514-19965
DATE: July 14, 2021

ORDER

Entitlement to compensation under 38 U.S.C. § 1151 for right wrist ankylosis and degenerative disc disease s/p arthrodesis with internal fixation (fusion) is denied. 

Entitlement to service connection for right wrist ankylosis and degenerative disc disease s/p arthrodesis with internal fixation (fusion) is denied.

FINDINGS OF FACT

1. The preponderance of the evidence reflects that the Veteran did not incur any additional disability from right wrist ankylosis and degenerative disc disease s/p arthrodesis with internal fixation (fusion) due to any VA medical procedures, care, or treatment. 

2. The Veteran's right wrist ankylosis and degenerative disc disease s/p arthrodesis with internal fixation (fusion) is not related to active service.

CONCLUSIONS OF LAW

1. The criteria for compensation under 38 U.S.C. § 1151 for right wrist ankylosis and degenerative disc disease s/p arthrodesis with internal fixation (fusion) is denied. have not been met. 38 U.S.C. §§ 1151, 5107; 38 C.F.R. §§ 3.102, 3.361.

2. The criteria for service connection for right wrist ankylosis and degenerative disc disease s/p arthrodesis with internal fixation (fusion) have not been met. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. § 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from September 1967 to April 1971.

This case comes to the Board of Veterans' Appeals (Board) on appeal from a March 2019 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) which denied the claim for compensation under 38 U.S.C. § 1151 for right wrist ankylosis and degenerative disc disease s/p arthrodesis with internal fixation (fusion). 

In May 2019, the Veteran submitted a VA Form 10182 (Decision Review Request: Board Appeal (Notice of Disagreement) (NOD)) and elected a hearing with a Veterans Law Judge (VLJ).

In February 2021, the Veteran testified at a virtual Board hearing before the undersigned Veterans Law Judge (VLJ). A transcript of the hearing is associated with the record.

In this case, the Veteran's appeal for compensation under 38 U.S.C. § 1151 for right wrist ankylosis and degenerative disc disease s/p arthrodesis with internal fixation (fusion) has raised the question of potential entitlement to service connection for right wrist condition on a direct basis. 

While a claim for compensation under 38 U.S.C. § 1151 "constitutes a separate and distinct claim for VA benefits," Anderson v. Principi, 18 Vet. App. 371, 37677 (2004), 38 C.F.R. § 3.155(d)(2) requires that VA will adjudicate as part of the claim entitlement to any ancillary benefits that arise as a result of the adjudication decision. In this context, service connection is a benefit related to the 1151 claim and the Board will therefore adjudicate it as well. Cf. Bailey v. Wilkie, 33 Vet. App. 188 (2021) (38 C.F.R. § 3.155(d)(2) requires that, when entitlement to secondary service connection is raised, a formal claim for secondary service connection need not be filed, rather, VA must consider those "complications" in connection with the claim on appeal).

1. Entitlement to compensation under 38 U.S.C. § 1151 for right wrist ankylosis and degenerative disc disease s/p arthrodesis with internal fixation (fusion) 

The Veteran contends that he has been experiencing problems with his right wrist since VA performed wrist fusion surgery in January 2016. 

A Veteran who is disabled because of VA medical treatment may receive compensation for a qualifying additional disability in the same manner as if such additional disability were service connected. 38 U.S.C. § 1151. An additional disability is a qualifying disability if: (1) it was not the result of the veteran's willful misconduct; (2) the disability was caused by VA hospital care, medical or surgical treatment, or examination furnished the Veteran under any law administered by the VA; and, (3) the proximate cause of the disability was carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the VA in furnishing the hospital care, medical or surgical treatment, or examination, or the proximate cause of the disability was an event not reasonably foreseeable. 38 U.S.C. § 1151 (a).

In determining whether a Veteran has an additional disability, VA compares the Veteran's condition immediately before the beginning of the hospital care or medical or surgical treatment upon which the claim is based to the Veteran's condition after the care or treatment is rendered. 38 C.F.R. § 3.361. The additional disability or death must not have been due to the Veteran's failure to follow medical instructions. 38 C.F.R. § 3.361 (c)(3).

To establish actual causation, the evidence must show that the hospital care, medical or surgical treatment, or examination resulted in the Veteran's additional disability or death. 38 C.F.R. § 3.361 (c)(1). Merely showing that a Veteran received care, treatment, or examination and that the Veteran has an additional disability or died does not establish cause. Id. Hospital care, medical or surgical treatment, or examination cannot cause the continuance or natural progress of a disease or injury for which the care, treatment, or examination was furnished unless VA's failure to timely diagnose or properly treat the disease proximately caused the continuance or natural progress. 38 C.F.R. § 3.361 (c)(2). Proximate causation can be established when it is shown that VA hospital care, medical or surgical treatment, or examination caused the Veteran's additional disability or death and that: (i) VA failed to exercise the degree of care that would be expected of a reasonable health care provider, or that (ii) VA furnished the hospital care, medical or surgical treatment, or examination without the Veteran's or the Veteran's representative's informed consent. 38 C.F.R. § 3.361 (d).

Proximate causation can also be established when it is shown that a Veteran's additional disability or death was an event that was not reasonably foreseeable. 38 C.F.R. § 3.361 (d)(2). This fact is to be determined based on what a reasonable health care provider would have foreseen. Id. The event need not be completely unforeseeable or unimaginable but must be one that a reasonable health care provider would not have considered to be an ordinary risk of the treatment provided. Id. In determining whether an event was reasonably foreseeable, VA will consider whether the risk of that event was the type that a reasonable health care provider would have disclosed in connection with the informed consent procedures of 38 C.F.R. § 3.361 (d)(1)(ii) and § 17.32.

For the following reasons, entitlement to compensation under the provisions of 38 U.S.C. § § 1151 for residuals right wrist ankylosis and degenerative disc disease s/p arthrodesis with internal fixation (fusion) is not warranted.

In October 2018, the Veteran was afforded a VA examination. He reported that his right wrist condition began in 1994 while tightening a screw down with a screwdriver, which resulted in symptoms of pain, loss of hand control with frequent loss of grip and strength in wrist/hand. He was seen by private Dr. L.B. in 1994 for torn wrist tendons with surgical repair in 1994. The Veteran stated that in March 2007, he had a second surgery by private Dr. K.B. for "tendon reattachment by removing a bone in hand and performing reattachment of tendon laterally". In 2016, he underwent a right wrist fusion with internal fixation at VAMC due to breaks of the fixation screws from plate. The Veteran noted that since surgery he has complained of constant pain and numbness of right wrist and hand. 

In a February 2019 VA medical opinion, the clinician noted that review of the medical evidence shows the Veteran's right wrist became symptomatic in 1994. He was tightening a screw with a screwdriver, felt immediate pain, loss of grip and strength; and lost control of his hand. He was seen by Dr. L.B in Phoenix in 1994 for injury to wrist tendons. They were surgically repaired. In 2007, he had a second wrist surgery by Dr. K.B. in Mesa. He had "tendon reattachment by removing a bone in hand and performing reattachment of tendon laterally". The Veteran was seen in 2015 by VA orthopedist/hand surgeon, Dr. W.M. who noted: Patient has a stage IV carpometacarpal arthritis of the right thumb. He has failed conservative management and wishes to progress with operative intervention and excision of trapezium and pinning. Prior to the procedure (he) understood the procedure, alternatives, risks and agreed to the operation. He does have known arthritis of the wrist, but this will have to be done at a separate time as both operations are too much surgery for the 1 area at a time and needs to recover in between...

The clinician further noted that the Veteran's surgery was successful, so, was seen again in January 2016 by Dr. W.M., this time for "right wrist fusion with banked bone graft, and application of short-arm splint." The details of the surgery, indications, procedure, informed consent as discussed with the Veteran are noted below: "The patient has degenerative arthritis of the right wrist, been managed conservatively with steroid injections as well as splinting, which has not been effective in relieving his pain. He elected for operative intervention. Prior to the procedure, he understood the procedure, alternatives, risks, and agreed and consented to the operative intervention." The surgery was uneventful; post-op, the Veteran was followed periodically, he had serial radiographs demonstrating progressive healing. However, he experienced spontaneous onset of pain a few months later. He was referred to a civilian hand surgeon as Dr. W.M. had retired. Orthopedist J.T., MD, evaluated the Veteran on July 18, 2016 for right hand pain. He noted that after the surgery by Dr. W.M. in January 2016, he did well for a while, but "he awoke, started to move the hand and had a 'pop' and spontaneous onset of pain". Imaging demonstrated complete loss of the dorsal fusion of the wrist fixation plate with 3 broken screws. He concluded that it was 'Hardware failure with failed arthrodesis'. The Veteran had a revision arthrodesis on August 16, 2016. Intra-operative findings demonstrated broken screws, non-union of the fusion mass at the radiocarpal and midcarpal joints. Follow up progress was monitored with imaging, 'impending non-union vs delayed union' was considered, his wrist was re-casted by Dr. J.T. He recommended that the Veteran stop NSAIDs as he was taking 1600 mg of ibuprofen for back pain, so could not discontinue. His complete healing was monitored by Dr. J.T. until discharge. The clinician indicated that it is noted the Veteran had carpal tunnel release, and ulnar nerve decompression at the wrist and elbow (cubital tunnel) by orthopedist J.G. in 2018. 

The clinician opined that it was less likely than not that a right wrist condition was caused by or became worse as a result of VA treatment. The clinician opined also opined that it was less likely than not that additional disability that resulted from the attending VA personnel's failure to follow the appropriate standard of care. The clinician also opined that it was less likely than not that additional disability resulted from an event that could not have been reasonably been foreseen by a reasonable healthcare provider. The clinician further opined that it was less likely than not failure on the part of VA to timely diagnose and/or properly treat the claimed disease or disability allowed the disease or disability to continue. 

The clinician explained that the Veteran has had multiple right wrist surgeries since 1994. He presented with degenerative arthritis of the right wrist and failed conservative management when he opted for arthrodesis. He has a history of tobacco abuse. He takes high dose NSAIDs for neck and back pain. In addition, the aging process, inadvertent or unintentional hand/wrist trauma are all well-known impediments to any healing. The clinician indicated the Veteran's right wrist surgery was successfully performed; he was monitored periodically in the post-op period. The Veteran's right wrist required a revision arthrodesis for non-union. The clinician noted that there is insufficient evidence that the Veteran's claimed conditions of right wrist was caused by or became worse as a result of the VA treatment. The clinician explained that there is no evidence of an additional disability, specifically, no disability resulted from the attending VA personnel's failure to follow the appropriate standard of care; and no additional disability resulted from an event that could not have reasonably been foreseen by a reasonable healthcare provider. There is no evidence of a failure on the part of VA to timely diagnose and/or properly treat the claimed disease or disability or allowed the disease or disability to continue to progress.

The clinician indicated that is obvious that the Veteran was healing albeit slowly from his right wrist surgery until the inciting incident/event described by the Veteran as a 'pop'. Dr. J.T. found broken screws and non-union. The clinician stated that it is unfortunate that the Veteran's surgical outcome was less than satisfactory, but there is insufficient evidence that it was due to or as a result of VA negligence. He noted that medicine is not a definite science. Also, surgery is irreversible, complications of surgery are unpredictable, and results cannot be guaranteed. Therefore, a calculated measured approach to treatment is necessary, as was the case in this Veteran. The clinician further noted the Veteran had severe degenerative disease in the wrist and had failed conservative management. His VA orthopedist advised him about potential risks and complications of surgery, the Veteran was well informed, signed the consent form freely and willingly.

At his February 2021 Board hearing, the Veteran testified that right wrist surgery was performed at VAMC, and shortly thereafter he noticed a big bump on his hand. He indicated that an x-ray revealed three screws had broken. He asserts the neurology report submitted is false, since there is no mention of the malfunction of the material that was used in this where the screws snapped The Veteran noted that no other doctors have actually stated that VA doctors "messed up", but one of his neurologist stated that he has permanent nerve damage. 

The February 2019 medical opinion is highly probative, as the clinician reviewed in detail the pertinent medical records, discussed the salient facts, and provided a complete rationale for the conclusion that there was no additional disability due to the VA surgery. As the clinician explained the reasons for his conclusions based on an accurate characterization of the evidence of record, his opinion on these questions are entitled to substantial probative weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning; threshold considerations are whether the person opining is suitably qualified and sufficiently informed).

Although the Board recognizes the sincerity of the Veteran's claim, the February 2019 medical opinion found the Veteran does not have a current, qualifying, additional disability caused or made worse by VA treatment for the purposes of compensation under 38 U.S.C. § 1151. While laypersons are competent to provide opinions on some medical issues, the specific issue in this case falls outside the realm of common knowledge of a layperson. The question of whether the VA surgery was the cause of the current disability and symptoms is a complex medical as to an internal medical process which extends beyond an immediately observable cause-and-effect relationship that is of the type that the courts have found to be beyond the competence of lay witnesses. Jandreau v. Nicholson, 492 F.3d 1372, 1376, n. 4 (Fed. Cir. 2007) ("sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer"). As a layperson, it is not shown that the Veteran possesses the medical expertise to provide such an opinion. Thus, the Veteran is not competent to opine on the question of whether he has a current, qualifying, additional disability due to the VA surgery for purposes of compensation under 38 U.S.C. § 1151. Moreover, there is no other competent opinion on this question.

As there is no additional disability caused or made worse by VA treatment shown, the Board need not reach the question of whether the proximate cause of any such additional disability was: (a) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in furnishing the hospital care, medical or surgical treatment, or examination; or (b) an event not recently foreseeable.

For the foregoing reasons, the preponderance of the evidence reflects that the Veteran did not incur additional disability as a result of VA procedures, care, or treatment. Since the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102

2. Entitlement to service connection right wrist ankylosis and degenerative disc disease s/p arthrodesis with internal fixation (fusion) 

Service connection will be granted if the evidence demonstrates that current disability resulted from an injury or disease incurred in active military service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Establishing service connection generally requires competent evidence of three things: (1) current disability; (2) in-service disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Saunders v. Wilkie, 886 F.3d 1356, 1361 (Fed. Cir. 2018). Consistent with this framework, service connection is warranted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

In an alternative theory of entitlement to compensation, the Veteran contends that his right wrist ankylosis and degenerative disc disease is due to military service. For the following reasons, the Board finds that service-connection for right wrist ankylosis and degenerative disc disease is not warranted. 

An October 2018 VA examination shows current diagnoses of right wrist ankylosis, degenerative disc disease, and s/p right wrist arthrodesis with internal fixation (fusion). The Veteran's service treatment records (STRs) shows the Veteran struck his right hand the day prior, and the circumstances were unknown. He exhibited swelling over dorsum laterally and x-ray revealed no fracture. He was treated with a splint to be removed in 48 hours. Post-service clinical records show the Veteran's right wrist became symptomatic in 1994, when he was tightening a screw with a screwdriver, felt immediate pain, loss of grip and strength; and lost control of his hand. At his February 2021 Board hearing, the Veteran testified that he does not recall the circumstances of in-service right-hand injury. He indicated that his wrist started bothering him within five years after service separation. 

A December 2018 VA medical opinion notes review of the Veteran's STRs, private medical records, VA clinical records, and October 2018 VA examination report. The physician opined that the Veteran's right wrist condition was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The physician explained that the Veteran's service treatment records show that he injured his right hand and saw an orthopedic specialist the next day. An x-ray was done noting no fracture. He was to wear a splint for 2-days then take it off. No further medical treatment or complaints regarding his right hand is noted through his release from active duty some two years later. The physician further explained that review of the claims file shows no objective evidence supporting the premise that his current right wrist condition incurred in or was caused by his right-hand injury during his military service. 

As the VA examiner explained the reasons for his conclusions based on an accurate characterization of the evidence, to include consideration of the Veteran's lay statement, his opinion is entitled to substantial probative weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning; threshold considerations are whether the person opining is suitably qualified and sufficiently informed). Moreover, there is no contrary medical opinion in the evidence of record. 

During the Board hearing, the Veteran indicated that he started having wrist symptoms within five years of service separation but did not explicitly state that he had continuous wrist symptoms since service. 

For the reasons and bases set forth above, the preponderance of the evidence is against the claim of service connection for right wrist ankylosis and degenerative disc disease s/p arthrodesis with internal fixation (fusion). The benefit of the doubt doctrine is therefore not for application and the claims must be denied. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102.

 

 

Jonathan Hager

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board R. Walker, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.